529 N.W.2d 481 (1995)
STATE of Minnesota, Respondent,
v.
Paul Edward ORSELLO, Appellant.
No. C2-94-1435.
Court of Appeals of Minnesota.
April 4, 1995.
Review Granted June 14, 1995.
*482 Hubert H. Humphrey, III, Atty. Gen., James B. Early, Asst. Atty. Gen., St. Paul, MN, James T. Reuter, Chisago County Atty., Center City, for respondent.
Cynthia A. Jokela, Robin Powers Kinning, Kimberly J. Nordby, Fredrikson & Byron, P.A., Minneapolis, for appellant.
Considered and decided by KALITOWSKI, P.J., LANSING and SHORT, JJ.

OPINION
LANSING, Judge.
A defendant convicted of harassment under Minn.Stat. § 609.749 challenges the denial of his motion for a new trial based on the jury instruction setting forth the requisite intent. The district court interpreted the statute to require that the state show general and not specific intent, and we affirm.

FACTS
Diane and Paul Orsello dissolved their nine-year marriage in November 1992. In June 1992, while the couple was separated, Diane Orsello obtained a restraining order against Paul Orsello that prohibited him from contacting her through any means of communication. In May 1993 Paul Orsello was convicted of a July 1992 violation of the protection order.
In November 1993, Paul Orsello was charged for a series of incidents alleged to be harassment. The first incident occurred on June 1, 1993, the effective date of Minn.Stat. § 609.749, when he came to the children's Tuesday night T-ball practice (in violation of the protection order) and left only when Diane Orsello threatened to call the police. One week later he made a U-turn when he saw Diane Orsello driving in the opposite direction; he followed her through two right turns, a left turn, and a third right turn, desisting when she drove into the parking lot of a police and fire station.
Paul Orsello also left repeated telephone messages on Diane Orsello's answering machine and numerous written notes in her mailbox from June until November 1993. The majority of these messages and notes were directed at her, asking for a date or to talk. A general theme in these communications was that lawyers, judges, and county social services providers were manipulating *483 Diane Orsello to break up the family. Many of the messages and notes were addressed to the children and told them to do things to their mom (hug and kiss, pray, talk) for their dad. In one message he told Diane Orsello that her protection order was ineffective.
After the charge was issued, the messages on the answering machine decreased, but other incidents began to occur. During a November visitation exchange of the children, Paul Orsello challenged Diane Orsello to a fight and pulled out a gun in a case, saying that he hoped it would not go off. When he left with the children, he refused to talk about the pickup time and told her to "burn in hell."
Four months later, less than one month before the trial, he sent her a letter that said in part "tell [the judge] I said he can burn in hell with the rest of them and I will send them something they can't control. Ask [the defense attorney], she can prove it. The PBT Board is starting to p___ me off. I take it very personally when they f___ with my family."
At trial Diane Orsello testified to being scared by Paul Orsello's actions and statements, and noted that they were getting "angrier and meaner." Paul Orsello admitted at trial to committing all of the incidents alleged as harassment, but characterized his behavior as that of a loving husband and father seeking to reunite with his ex-wife and children. He also characterized Diane Orsello as overly sensitive.
At the close of evidence, the district court ruled that the jury instruction contained in the CRIM.JIG differed from the statutory language by requiring, as a second element of the crime, that the defendant intend to harass the victim. Over Paul Orsello's objection, the district court modified the CRIM. JIG to require only intentional conduct.
The jury found Paul Orsello guilty. At the sentencing hearing, he moved for a new trial based on the district court's revision of the CRIM.JIG. The district court denied the motion and Paul Orsello appeals.

ISSUE
Does the phrase "intentional conduct" in Minn.Stat. § 609.749 require that the state prove a defendant's general intent to commit the acts prohibited under the statute or prove a specific intent to harass?

ANALYSIS
Minn.Stat. § 609.749 makes it a gross misdemeanor for a person to harass another by committing any of a variety of specified acts. The statute criminalizes harassment in a two-part definition. First, to "harass" means
to engage in intentional conduct in a manner that:
(1) would cause a reasonable person under the circumstances to feel oppressed, persecuted or intimidated; and,
(2) causes this reaction on the part of the victim.
Minn.Stat. § 609.749, subd. 1 (1994). Second, to violate the statute, a person must "harass" another by committing any of the following acts:
(1) directly or indirectly manifests a purpose or intent to injure the person, property, or rights of another by the commission of an unlawful act;
(2) stalks, follows, or pursues another;
(3) returns to the property of another if the actor is without claim of right to the property or consent of one with authority to consent;
(4) repeatedly makes telephone calls, or induces a victim to make telephone calls to the actor, whether or not conversation ensues;
(5) makes or causes the telephone of another repeatedly or continuously to ring;
(6) repeatedly uses the mail or delivers or causes the delivery of letters, telegrams, packages, or other objects; or
(7) engages in any other harassing conduct that interferes with another person or intrudes on the person's privacy or liberty.
Id. at subd. 2.
It is "long settled" that the legislature may criminalize an act without regard to the actor's intention or motive. State v. Kjeldahl, 278 N.W.2d 58, 61 (Minn.1979) (citing *484 State v. Reps, 302 Minn. 38, 46, 223 N.W.2d 780, 786 (1974)). In determining that the statute on escape from custody is a general intent crime, the Kjeldahl court reasoned that because the statutory language did not mention intent, specific intent was not required for the crime. 278 N.W.2d at 61. Orsello argues that because Minn.Stat. § 609.749 requires "intentional" conduct in its definition of harassment, the legislature was not silent on intent, and thus Kjeldahl does not provide authority for reading the harassment law as a general intent crime.
Statutory interpretation is a question of law that we review de novo. State v. Zacher, 504 N.W.2d 468, 470 (Minn.1993). We disagree with Orsello's interpretation because it departs from the plain meaning of the statute and ignores the statutory evidence that the legislature has established for requiring specific criminal intent as an element of a criminal statute. See Semrad v. Edina Realty, 493 N.W.2d 528, 532 (Minn. 1992) (finding no implied cause of action because legislature aware of method for creating one and did not use it).
The definition section of Chapter 609 provides that when "criminal intent is an element of a crime in this chapter, such intent is indicated by the term `intentionally,' the phrase `with intent to,' the phrase `with intent that,' or some form of the verbs `know' or `believe.'" Minn.Stat. § 609.02, subd. 9(1) (1994). The word "intentional" is not defined in this section nor included in the list that makes criminal intent a specific element of a crime. Under these legislative definitions, a criminal statute lacking these key phrases or terms would not require specific intent as an element of the crime.
There are multiple examples of the legislature using the listed definitional phrases to create specific intent crimes. See Minn.Stat. § 609.582 (1994) (burglary); Minn.Stat. § 609.19(1) (1994) (second-degree intentional murder); Minn.Stat. § 609.52, subd. 2(1) (1994) (theft); Minn.Stat. § 609.611 (1994) (defrauding insurer); Minn.Stat. § 609.625 (1994) (aggravated forgery). In fact the language of other harassment statutes indicates the legislature's ability to distinguish between general and specific intent crimes by using these phrases. See Minn.Stat. § 609.713 (1994) (terroristic threats, requiring specific intent); Minn.Stat. § 609.746 (1994) (interference with privacy, requiring specific intent); Minn.Stat. § 609.79 (1994) (obscene or harassing telephone calls, requiring specific intent).
Statutes that use the term "intentional" to modify a type of behavior make the results of the conduct, rather than the actor's mental state, criminal. To prove a general intent crime, the state must show that the intentional conduct resulted in the outcome proscribed under the statute. In this manner "intentional" is used to distinguish criminal conduct from the accidental. Under this construction of intentional conduct, the state met its burden of proof when Orsello admitted that he purposefully did the acts alleged as harassment.
For intentional conduct to become harassment under Minn.Stat. § 609.749, two additional requirements must be met. First, the intentional conduct must be on the specific, albeit not exhaustive, list of acts defining harassment in subdivision two. Second, it must be done in a manner that would cause a reasonable person under the circumstances to feel oppressed, persecuted, or intimidated, and have that effect on the victim. The list provides specificity for the accused, law enforcement, and the jury on what types of acts may violate the statute. The reasonable person requirement provides a standard for evaluating the nature of the accused's actions. We conclude that by using these two devices, the legislature mitigated the potential disadvantage worked against defendants of a general intent crime while preserving its goal of not requiring a specific intent to harass. We do not find the statute inherently ambiguous and thus decline to apply the rule of lenity as Paul Orsello urges.
Three final issues are affected in varying degrees by our scope of review. First, we reject Orsello's claim, that he should be granted a new trial for the "undue disadvantage" caused by the district court's changing interpretation of the requisite intent necessary to prove the charge. Orsello has not alleged violation of a specific right *485 nor has he demonstrated actual prejudice. See Minn.R.Crim.P. 31.01. Orsello acknowledged that he did not request permission to present additional evidence after the district court made its final decision on how to instruct on intent. Although the CRIM.JIGs provide guidance on the elements of an offense, a defendant is not entitled to a new trial when the district court departs from them in its jury instruction so long as the instructions accurately state the applicable law. See State v. Williams, 324 N.W.2d 154, 158-59 (Minn.1982).
Second, Orsello argues that the district court improperly admitted a restraining order as Spriegl, evidence because the order's prejudicial effect outweighed its probative value. The district court admitted the evidence to show intent to harass under the Minn.R.Evid. 404(b) exception, but that element of the state's burden of proof was eliminated by the changed jury instructions. Nonetheless, the restraining order was relevant to assess the effect of Paul Orsello's intentional conduct on a reasonable person under the circumstances. The clear jury instructions eliminated any possible jury confusion about its role in adjudicating the harassment charge, and we conclude there was no reversible error in admitting it. Orsello did not raise this argument as a separate issue in his brief to this court and did not include it as a basis for his motion for new trial. At oral argument Orsello also argued that the district court erred in admitting evidence of a conviction for violating the restraining order. Because the admission of the conviction was not raised or even discussed in the brief, we do not address it.
Finally, on appeal the state objected to Paul Orsello's arguments relating to the statute's constitutionality because that issue was not raised to the district court. In light of that objection, we apply the "fundamental rule" that appellate courts will not decide issues raised for the first time on appeal, even those presenting constitutional dimensions. State v. Kremer, 307 Minn. 309, 312-13, 239 N.W.2d 476, 478 (1976); see also State v. Odenbrett, 349 N.W.2d 265, 269 (Minn.1984) (even though underlying factual issues raised at trial relate to right to privacy challenge, issue not expressly or independently raised at district court). The record is clear that the issue of constitutionality was not properly raised or litigated in the district court.

DECISION
The district court did not err when it interpreted "intentional conduct" in Minn. Stat. § 609.749 to require general rather than specific intent.
Affirmed.