STATE of Minnesota, Respondent,

v.

Paul Edward ORSELLO,
petitioner, Appellant.

No. C2–94–1435.

Supreme Court of Minnesota.

Sept. 12, 1996.

As Amended on Grant of Rehearing
Oct. 31, 1996.

John M. Stuart, State Public Defender, Cynthia Jokela, Special Assistant Public Defender, Fredrikson & Byron, P.A., Minneapolis, Kimberly J. Nordby, Special Assistant Public Defender, Minneapolis, for Appellant.

Hubert H. Humphrey, III, Attorney General, James B. Early, Assistant Attorney General, St. Paul, James T. Reuter, Chisago County Attorney, Center City, for Respondent.

## OPINION

GARDEBRING, Justice.

The appellant in this case, Paul Edward Orsello, appeals from his conviction under Minnesota's "stalking" statute, Minn.Stat. § 609.749 (1993). Orsello argues that the statute is ambiguous as to the level of intent required to convict him and that the statute should be read to require specific intent. In the alternative, Orsello asserts that if the statute is construed to require only general intent, then it is unconstitutionally "void for vagueness." The court of appeals agreed with the trial court that the language of the statute required only general rather than

specific intent, as an element of the crime. We conclude that conviction under the statute requires proof of specific intent and therefore reverse.

Paul and Diane Orsello were married for over nine years, but were divorced in 1992. Diane Orsello received custody of their three children. Appellant was granted visitation and the right to phone his children on certain days of the week. However, the record reflects that he continued to contact his wife and children frequently via the phone and in writing. Often appellant suggested reconciliation, or at least social contact, with his former wife. While the tenor of these contacts was often affectionate, sometimes appellant was threatening or angry. On one occasion, appellant showed his ex-wife a gun, stating he hoped "it wouldn't go off," and later told her she could "burn in hell."

Diane Orsello sought and received a harassment restraining order in June 1992, prohibiting appellant from contact with his family in any manner other than that allowed by a previous court order. Repeated contacts with his family resulted in his conviction for violating the harassment order in 1993. His contact with his wife and children continued and, based on incidents occurring from June to October 1993, he was charged with stalking under Minn.Stat. § 609.749 (1993).

There was some confusion at trial regarding whether stalking was a specific or general intent crime. Initially, the parties and the trial court assumed that specific intent was required and, therefore, that the prosecution had to prove appellant intended to stalk his wife. The trial court thus allowed the admission of appellant's conviction for violating the harassment order, as *Spreigl* evidence on the issue of intent.[1] After the close of evidence, however, the trial court concluded that only general intent was required and remarked that the prosecution had failed to prove specific intent.[2] The trial court therefore modified the model jury instruction for the stalking statute, which stated that specific intent was an element of this crime, to require only general intent.[3] *See* 10A Minn.Dist. Judges Ass'n, *Minnesota Practice*, CRIMJIG 24.57 (1995).

On appeal, the court of appeals affirmed appellant's conviction, agreeing with the trial court on the issue of intent and relying on the canons of statutory construction and on the absence of statutory language the legislature had previously indicated it would use to designate specific intent crimes. *State v. Orsello*, 529 N.W.2d 481, 484 (Minn.App. 1995); *see* Minn.Stat. § 609.02 (1994).

The crime of stalking is new and has no precise analogue in common law. Following the 1989 murder of a television actress by an obsessed fan, many state legislatures enacted statutes criminalizing stalking. However, because the crime of stalking is a new legislative creation, there is, at present, no widely

---

1. *See State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). In *Spreigl* this court established a process for admission of evidence of previous crimes or "bad acts" by the defendant. Such evidence is admissible only for certain limited purposes, one of which is the issue of intent. *See* Minn.R.Evid. 404(b) (prior crimes and/or "bad act" evidence not admissible to show defendant has a bad character, but may be admissible to show intent, identity, or motive).

2. We note that while the trial court remarked that the prosecution failed to prove specific intent, our review of the record suggests that there was evidence presented at trial from which specific intent could be inferred.

3. The model jury instructions state in relevant part:

The elements of a harassing stalking crime are:
First, the defendant
(1) directly or indirectly manifested a purpose or intent to injure the person, property, or rights of another by the commission of an unlawful act.
(2) stalked, followed, or pursued another.
(3) returned to the property of another without claim of right to the property or consent of one with authority to consent.
(4) repeatedly made telephone calls, or induced another to make telephone calls to the defendant, whether or not conversation ensued.
(5) made or caused the telephone of another repeatedly or continuously to ring.
(6) repeatedly used the mail or delivered or caused the delivery of letters, telegrams, packages, or other objects.
(7) engaged in harassing conduct that interfered with another person or intruded on the person's privacy or liberty.
Second, defendant intended to harass .
To "harass" means to engage in intentional conduct in a manner that would cause a reasonable person under the circumstances to feel oppressed, persecuted or intimidated and

accepted legal definition for it.[4] Generally speaking, stalking encompasses predatory behavior directed usually at a specific individual. A stalker will engage in repeated behavior, sometimes seemingly benign, sometimes threatening, which nonetheless frightens and intimidates his or her victim. Stalking statutes typically offer injunctive relief in the form of either a protective or a restraining order. In addition, many of these statutes criminalize repeated, willful, malicious conduct directed at a specific person that actually alarms, annoys, or harasses that person.[5]

Minnesota enacted its anti-stalking legislation in 1993 amid publicity surrounding incidents of stalking behavior which resulted in murder. *See* Cassandra Ward, Note, *Minnesota's Anti–Stalking Statute: A Durable Tool to Protect Victims from Terroristic Behavior,* 12 Law & Ineq.J. 613, 633–34 (1994) (describing the events leading up to Minnesota's adoption of the statute). The stalking statute, under which appellant was convicted, reads as follows:

Subd. 1. Definition. As used in this section, "harass" means to engage in intentional conduct in a manner that:

(1) would cause a reasonable person under the circumstances to feel oppressed, persecuted, or intimidated; and

(2) causes this reaction on the part of the victim.

Subd. 2. Harassment and stalking crimes. A person who harasses another by committing any of the following acts is guilty of a gross misdemeanor:

(1) directly or indirectly manifests a purpose or intent to injure the person, property, or rights of another by the commission of an unlawful act;

(2) stalks, follows, or pursues another;

(3) returns to the property of another if the actor is without claim of right to the property or consent of one with authority to consent;

(4) repeatedly makes telephone calls, or induces a victim to make telephone calls to the actor, whether or not conversation ensues;

(5) makes or causes the telephone of another repeatedly or continuously to ring;

(6) repeatedly uses the mail or delivers or causes the delivery of letters, telegrams, packages, or other objects; or

(7) engages in any other harassing conduct that interferes with another person or intrudes on the person's privacy or liberty.

Minn.Stat. § 609.749 (1993).

In this case, the issue is whether the stalking statute defines a crime of "general intent" or a crime of "specific intent." The meaning of the word "intent" in criminal law is, given its use in so many similar terms, at the very least, confusing. A criminal state of mind, or a criminal intent, is, of course, a necessary element of any crime having its origin in common law. *See* Wayne R. La-Fave, *Substantive Criminal Law,* § 3.5(e) (1986). If the legislature chooses not to include an intent requirement in a statutory crime, one is implied as a matter of law. *State v. Charlton,* 338 N.W.2d 26, 30 (Minn. 1983) (citing *United States v. United States Gypsum Co.,* 438 U.S. 422, 436–37, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 (1978)).

Two types of intent exist, specific and general. General intent requires only that the defendant engaged intentionally in specific, prohibited *conduct.* *State v. Lindahl,* 309 N.W.2d 763, 766 (Minn.1981). In contrast, specific intent requires that the defendant acted with the intention to produce a specific *result,* such as is the case in premeditated murder. *Charlton,* 338 N.W.2d at 30; La-Fave, *supra,* at § 3.5(a).

When legal scholars developed the Model Penal Code, they sought to ameliorate the confusion inherent in the concept of "intent" and adopted a four part delineation of

---

caused this reaction on the part of _____
* * * *
10A Minn. Dist. Judges Ass'n, *Minnesota Practice,* CRIMJIG 24.57 (1995).

**4.** *See generally* Ellen F. Sohn, *Anti–Stalking Statutes: Do They Actually Protect Victims?,* 30 Crim. L.Bull. 203 (May/June 1994); M. Katherine Boy-

chuk, Comment, *Are Stalking Statute Laws Unconstitutionally Vague or Overbroad?,* 88 Nw. U.L.Rev. 769 (1994).

**5.** Sohn, *Anti–Stalking Statutes, supra,* at 207, 210; *see also* Cal.Penal Code § 646.9(a) (West 1995).

intent, replacing the general intent/specific intent dichotomy. *See* Minn.Stat. § 609.02, subd. 9 (1965). The Model Penal Code divides intent into four concepts: purpose, knowledge, negligence, and recklessness. Model Penal Code § 2.02 (1962). When the Minnesota legislature drafted its current criminal code in 1963, it borrowed from the Model Penal Code when it set forth the following guidelines as to how it would henceforth designate criminal intent:

(1) When criminal intent is an element of a crime in this chapter, such intent is indicated by the term "intentionally," the phrase "with intent to," the phrase "with intent that," or some form of the verbs "know" or "believe."

(2) "Know" requires only that the actor believes that the specified fact exists.

(3) "Intentionally" means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result. In addition, except as provided in clause (6), the actor must have knowledge of those facts which are necessary to make the actor's conduct criminal and which are set forth after the word "intentionally."

(4) "With intent to" or "with intent that" means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result.

Minn.Stat. § 609.02, subd. 9 (1994). Thus, when this court seeks to interpret a criminal statute to determine the level of intent required for culpability under the statute, we must first turn to the above statutory guide. *See, e.g., State v. Raymond,* 440 N.W.2d 425, 426 (Minn.1989).

Appellant presents two arguments that Minnesota's stalking statute requires specific intent, one based on the unusual drafting of the statute and the other linked to constitutional requirements. Appellant's statutory drafting argument is twofold. First, he argues that the statutory language supports an inference that the legislature intended to make stalking a specific intent crime, although it did not use one of the exact phrases listed in section 609.02, subdivision 9. Appellant observes that the stalking statute crimi-

nalizes conduct also prohibited by other criminal statutes and that those other statutes require specific intent. Thus, argues appellant, as the legislature had previously determined conduct comprising part of the new crime of stalking to require specific intent, the stalking crime should also require specific intent.

In his second statutory argument, appellant relies on *State v. Kjeldahl,* 278 N.W.2d 58 (Minn.1979), where this court held that the legislature could criminalize an act without mention of a required intent level and thereby create a general intent crime. *Id.* at 61. Appellant notes that the legislature could have made stalking a general intent crime without any reference to intent. Because it chose to include in the statute the phrases "intentional conduct" and "in a manner that," appellant argues that the legislature must have intended the statute to require some level of intent other than general intent. *See* Minn.Stat. § 609.749 (1993). That is, in order to create a general intent crime, the legislature could simply have said that "'harass' means to engage in * * * conduct * * * that * * *." *Id.* But it did not; moreover, it specifically added language referring to intent. Therefore, argues appellant, the stalking statute should be construed to require specific intent.

The state responds, relying principally on the absence of one of the section 609.02, subdivision 9 phrases, that the statute is clearly a general intent crime. The state argues that the legislature could have used one of these previously-designated "magic phrases," but chose not to, thus indicating its intention to require only general intent. With respect to appellant's argument that inclusion of the phrases "intentional conduct" and "in a manner that" indicates a specific intent requirement, the state offers an analogy between the stalking statute and the assault statute. The assault statute criminalizes "[t]he intentional infliction of" bodily harm; the word "intentional" in both statutes, contends the state, modifies only the word following—in the case of the stalking statute, the word "conduct"—and is present only to avoid criminalizing accidental conduct. *Compare* Minn.Stat. § 609.02, subd. 10(2) (1994) *with* Minn.Stat. § 609.749, subd. 1 (1993).

Appellant also presents a constitutional argument, contending that the statute must be read to require specific intent or it will be unconstitutionally vague. That is, a stalking statute requiring only general intent would fail to give adequate notice of the conduct it prohibits and, thus, would be constitutionally infirm. *See Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Appellant asserts that this court must apply the rule of statutory construction requiring courts to avoid, if possible, interpreting statutes in a manner that renders them unconstitutional. Minn.Stat. § 645.17(3) (1994). Further, appellant notes that if, as here, a court is confronted by two differing possible constructions of a statute, the court must adopt the option which upholds the constitutionality of the statute. *State on Behalf of Forslund v. Bronson,* 305 N.W.2d 748, 751 (Minn.1981). Thus, the stalking statute should be construed to require specific intent. In the context of this constitutional argument, appellant also contends that, because the level of intent required by the stalking statute is ambiguous, it must be interpreted with reference to the so-called "rule of lenity," which holds that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity" towards the defendant. *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971); *State v. McKown,* 461 N.W.2d 720, 725 (Minn.App.1990), *aff'd* 475 N.W.2d 63 (Minn.1991), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). Applying this rule here would require a determination that the statute requires specific intent as an element of the crime.

The state dismisses Orsello's argument about the statute's potential unconstitutionality as quibbling over semantics, noting that the legislature need not define each and every term it uses. The state urges that stalking is a straightforward crime and that persons of common understanding will, to paraphrase Justice Stewart's aphorism about obscenity, know it when they see it. *See Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964).

■ Our goal in cases involving statutory interpretation is, of course, to give effect to the intention of the legislature in drafting the statute. *State v. District Court of Ramsey County,* 134 Minn. 131, 134–35, 158 N.W. 798, 799 (1916). We begin with a careful examination of the statutory language itself and a reference to the tools of statutory construction provided by the legislature.

■ As the state notes, none of the "specific intent" language of section 609.02, subdivision 9, is present in the stalking statute. However, because of the peculiar drafting of the statute, we conclude that our analysis must go further. In particular, we note two unusual aspects of the statute that have a bearing on the level of intent required. First, the statute presents a detailed list of acts constituting stalking; this list includes several types of conduct which the legislature has criminalized in other portions of the criminal code. These other statutes plainly require specific intent. Second, as mentioned above, the stalking statute's definition section states that " 'harass' means to engage in intentional conduct in a manner that * * *." Minn.Stat. § 609.749, subd. 1 (1993). The last two phrases, "intentional conduct" and "in a manner that," appear to indicate an intent requirement greater than simple general intent.

We consider first the importance of the reference to other, specific intent crimes within the stalking statute. While not a model of clarity, part of the stalking statute is nonetheless carefully drafted. In section 609.749, subdivision 2, the legislature precisely enumerated the specific actions that would violate the statute. A person who engages in any of the following acts is in violation of the stalking statute:

(2) stalks, follows, or pursues another;

(3) returns to the property of another if the actor is without claim of right to the property or consent of one with authority to consent;

(4) repeatedly makes telephone calls, or induces a victim to make telephone calls to the actor, whether or not conversation ensues;

* * * *

(6) repeatedly uses the mail or delivers or causes the delivery of letters, telegrams, packages, or other objects; or

(7) engages in any other harassing conduct that interferes with another person

or intrudes on the person's privacy or liberty.

Minn.Stat. § 609.749, subd. 2 (1993).

This listing of behaviors is notable for its close similarity to the definitions of other crimes, all of which clearly require specific intent. For example, anyone who "repeatedly uses the mail or delivers or causes the delivery of letters, telegrams, packages or other objects" has violated the stalking statute. Minn.Stat. § 609.749, subd. 2(6) (1993). It is already a crime in Minnesota to "repeatedly use[ ]the mails or deliver[ ]letters, telegrams, or packages" when done "with the intent to abuse, disturb, or cause distress." Minn.Stat. § 609.795, subd. 1(3) (1994).

Another analogy is provided in the comparison of the crime of "repeatedly mak[ing] telephone calls, whether or not conversation ensues, with intent to abuse, disturb, or cause distress," Minn.Stat. § 609.79, subd. 1(1)(b) (1994), with the similar provision in the stalking statute, which criminalizes "repeatedly mak[ing] telephone calls, or induc[ing] a victim to make telephone calls to the actor, whether or not conversation ensues" Minn.Stat. § 609.749, subd. 2(4) (1993). In both cases, the language used is nearly identical, save that the intent requirement is clearly spelled out in the former statute, but not in the stalking statute.

A final example is provided in the "trespass" provision of the statute. It is also a crime in Minnesota to enter on another's property to look through the window or other aperture of a house or dwelling "with the intent to intrude upon or interfere with the privacy of a member of the household." Minn.Stat. § 609.746, subd. 1(a) (1994). The stalking statute contains a similar provision, making it a crime to engage "in any other harassing conduct that interferes with another person or intrudes on the person's privacy or liberty." Minn.Stat. § 609.749, subd. 2(7) (1993); *see also id.* at subd. 2(3).

These similarities evince a legislative intention to make the above mentioned criminal statutes consistent. To conclude that conviction of a crime, based on identical behavior, requires one level of intent under one statutory provision and another level of intent under a second statutory provision, contradicts this purpose. Clarity must be a hallmark of the criminal law if it is to function and, thus, we believe that the parallels between existing criminal statutes requiring specific intent and the stalking statute militate toward finding that the stalking statute also requires specific intent.

With regard to the other acts enumerated in subdivision 2, which do not have parallels elsewhere in the criminal code, we conclude by virtue of their language and their presence in the subdivision, that it is proper to infer the requirement of specific intent for them as well. We note, for example, that the first action on the list is cast in language strongly indicative of specific intent. It criminalizes the direct or indirect manifestation of "a purpose or intent to injure the person, property, or rights of another by the commission of an unlawful act." Minn.Stat. § 609.749, subd. 2(1) (1993). This language, "a purpose or intent to," is remarkably similar both to the most stringent intent requirement of the Model Penal Code, "purposely," and to the Minnesota legislature's codification of it, "with intent to." Both of the latter phrases mean that the actor fully intends the result of his or her actions. *Compare* Model Penal Code § 2.02(2)(a)(i) (1962) (a person acts "purposely * * * [when] it is his conscious object to engage in conduct of that nature or to cause such a result * * *") *with* Minn.Stat. § 609.02, subd. 9(4) (" 'with intent to' * * * means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result.").

As for appellant's second argument, relating to the stalking statute's definition section, we believe that the language of subdivision 1 reinforces our conclusion that specific intent is required by the text of the stalking statute. Subdivision 1 states that: "[a]s used in this section, 'harass' means to engage in intentional conduct in a manner that: (1) would cause a reasonable person under the circumstances to feel oppressed, persecuted, or intimidated; and (2) causes this reaction on the part of the victim." Minn.Stat. § 609.749, subd. 1 (1993). Canons of statutory construction require us to give effect to each word in the statute, to avoid any interpretation that characterizes any portion of the

statute as surplusage. Minn.Stat. § 645.17(2) (1994). The legislature needed only itemize the actions to be criminalized to create a general intent crime. *See Lindahl,* 309 N.W.2d at 767. It did not need to qualify further the type of action required. In other words, a general intent version of this statute did not need either the adjective "intentional" or the phrase "in a manner that." *See* Minn.Stat. § 609.749, subd. 1 (1993). The addition of these words, we believe, further demonstrates that the stalking statute must require specific intent, for how does one act "in a manner that would cause a reasonable person to feel oppressed" unless one acts with at least the knowledge, if not the purpose, to cause such a reaction? To conclude otherwise would be to admit the possibility that one might be guilty of accidentally stalking and that seems inconsistent with the legislative background and intent of the statute.

We hold today that Minn.Stat. § 609.749 (1993), which defines the crime of stalking, requires specific intent. The legislature should be clear, but it need not be redundant. In subdivision 2, our legislators, having once designated certain actions as criminal when done with specific intent, were under no obligation to do so again when they included them in the stalking statute. In subdivision 1, the legislature included terms not required to produce a general intent crime, but which must still be given meaning. We hold that to read the statute as a coherent whole requires that stalking be a specific intent crime.

Although it is not necessary to our conclusion, we find merit in appellant's constitutional argument as well. Appellant asserts that interpreting the stalking statute to require general intent will render the statute unconstitutionally vague because it will not provide sufficient notice to the public of what conduct is prohibited. Appellant also asserts that a general intent stalking statute would be constitutionally infirm because it would fail to give adequate notice of the conduct prohibited and thus would be ambiguous. *See Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Ambiguous criminal statutes, appellant contends, must be interpreted with reference to the so-called rule of lenity. In order to ensure fair public notice of what action is prohibited by the criminal statutes, this rule holds that a statute lacking a clear statement of the level of intent required must be resolved in favor of lenity: here, to require specific intent. *See Liparota v. United States,* 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985); *McKown,* 461 N.W.2d at 725.

Criminal statutes must give adequate notice to the general public of what conduct is prohibited. "[T]he terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties * * *." *Connally,* 269 U.S. at 391, 46 S.Ct. at 127. The *Connally* Court held that statutes must be written in such a manner that persons of ordinary intelligence need not guess at their meaning or differ as to their application. 269 U.S. at 391, 46 S.Ct. at 127. A court may understand "the gist of the legislative expression," but such understanding does not make a statute constitutionally clear. *See, e.g., Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

The state's assumption that stalking is a straightforward crime and thus that persons of common intelligence will be able to readily discern what behavior is prohibited misses the point of the constitutional requirement of clarity. "[W]hen choice has to be made between two readings of what conduct [the legislature] has made a crime, it is appropriate, before we choose the harsher alternative, to require that [it] should have spoken in language that is clear and definite." *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–22, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952); *McKown,* 461 N.W.2d at 725. It may well be that people of ordinary intelligence might get the "gist" of a stalking statute. But, the confusion at appellant's trial regarding the stalking statute's intent requirement belies that assertion. At the outset, all parties involved assumed that the statute required proof of specific intent. To do so seemed to comport with common sense. Only after reading the statute carefully did confusion arise; apparently, when the attorneys and the judge first saw this case, they quickly concluded that it contained a specific intent requirement.

Thus, if we were to conclude that the stalking statute required only general intent, the statute might be void for vagueness and, thus, unconstitutional. While we do not base our decision on any resolution of this constitutional issue, it does buttress our statutory analysis. Moreover, we observe that the similar statutes of several other states have been the subject of void for vagueness challenges. *See, e.g., People v. Heilman,* 25 Cal. App.4th 391, 30 Cal.Rptr.2d 422 (1994), *rev. denied,* (Aug. 25, 1994); *Culbreath v. State,* 667 So.2d 156 (Ala.Crim.App.1995), *cert. denied,* (Aug. 4, 1995). While none of those statutes have had the drafting peculiarities of Minn.Stat. § 609.749, most of those that have survived have included a specific intent requirement.

The only conclusion, therefore, that both conforms to a common sense reading of the entire text of the statute and avoids the possibility of constitutional infirmity is that the statute requires specific intent. The Minnesota District Judges Association correctly defined specific intent as an element of the crime of stalking. *See* 10A Minn.Dist. Judges Ass'n, *Minnesota Practice,* CRIM-JIG 24.57 (1995). If, however, the legislature truly meant for stalking to be a general intent crime, it possesses the means to ameliorate the statute's present lack of precision by a clarifying amendment.

The decision of the court of appeals is reversed and this case is remanded to the trial court. Because the case was submitted to the jury with a mistaken instruction on the question of intent, a new trial is ordered.

STRINGER, Justice (dissenting).

The majority's conclusion that Minn.Stat. § 609.749 requires proof that the defendant intended to cause the victim to feel oppressed, persecuted or intimidated, as opposed to proof that the defendant intended to engage in conduct that caused the victim's reaction, regardless of whether the defendant had the specific intent to cause the reaction, is an unwarranted rewrite of a clear and unambiguous statute. Further, it is based upon a constitutionality argument that was not raised in the lower courts and should not now be heard by the court because it is raised for the first time here. Therefore, I respectfully dissent.

My first point of departure from the majority is its characterization of Minn.Stat. § 609.749 as a product of "peculiar drafting".—apparently offered as a substitute for ambiguity as the requisite rationale for engaging in a search for legislative intent. Minn.Stat. § 645.16; *see also Phelps v. Commonwealth Land Title Ins. Co.,* 537 N.W.2d 271, 274 (Minn.1995); *Ed Herman & Sons v. Russell,* 535 N.W.2d 803, 806 (Minn.1995). I do not believe Minn.Stat. § 609.749 is either peculiarly drafted nor is it ambiguous. As the majority points out, the statute has none of the words we are told by the legislature to look for, by application of Minn.Stat. § 609.02, subd. 9, to guide us as to whether proof of specific intent is required in applying Minn.Stat. § 609.749. The term "intentional" is used to define "conduct" in the definition of "harass" in subdivision 1, but clearly only to prevent innocent, accidental, negligent or other kinds of unintentional activity from triggering the statute. Thus, for example, if the defendant "repeatedly" telephones another but calls a wrong number, presumably no violation of Minn.Stat. § 609.749, subd. 2(4) would occur because the defendant did not intend to telephone the one called. But if the defendant intended to call the party reached, and the calls "(1) * * * would cause a reasonable person under the circumstances to feel oppressed, persecuted or intimidated; and (2) causes this reaction on the part of the victim" a violation of Minn.Stat. § 609.749 has occurred, without any further showing that the defendant had the specific intent to cause the victim's reaction. That clearly is what the legislature has established as harassing and I see no reason for this court to inject an additional requirement of proof of specific intent to cause the victim's oppressed, intimidated or persecuted reaction. If the legislature had intended to require proof of specific intent, as the majority concludes, it would simply have inserted the words "intentionally" or "with intent to" before the key word "causes" in subdivision 1 so that it would read:

Subd. 1 Definition. As used in this section, "harass" means to engage in intentional conduct in a manner that:

\* \* \* \*

(2) *intentionally* causes this reaction on the part of the victim.

It did not do so and it is not ours to supply the omitted words.[1]

Ironically, the majority's reliance on "peculiar drafting" to justify a statutory rewrite to require proof of specific intent has created its own peculiar outcome, because now the state will not only be required to prove intent to oppress, persecute or intimidate; it must also prove that a hypothetical, reasonable person would so react, and that the victim did so react. But the peculiar result comes about because the court's legislative rewrite grafts proof of specific intent onto a statute that already had a protective device incorporated in it to prevent its unwarranted application—that the conduct must be of a nature to cause a reasonable person to feel oppressed. So we are left with the anomaly of our courts exonerating those stalkers who fully intend to oppress, persecute or intimidate their victims, but proof fails as to the reasonableness of the victims' reaction? Are we to protect the stalker who intends to inflict on a victim the odious consequences of the stalker's conduct in preference to the interests of the victim who may unreasonably have felt those consequences? It seems this is precisely what the legislature was avoiding when it established a clear and simple statutory framework requiring only proof of intent of conduct, coupled with proof that a reasonable person would have so reacted and the victim in fact did so respond, to establish the crime of harassment and stalking. The reasonable person standard acts as a check to insure that an actor intentionally engaging in a mild degree of conduct otherwise covered by the statute will not be caught in its scope because of another person's unreasonable reaction. The majority's rewrite of the "peculiarly drafted" statute leads to its own peculiar, puzzling and irrational result.

In finding a requirement of specific intent, the majority places heavy emphasis on the listing in subdivision 2 of Minn.Stat. § 609.749 of a number of activities that are criminalized in other statutes where specific intent is required, concluding that the legislature must have intended to require specific intent because it references other specific criminal conduct that requires specific intent proof. I find this analysis misguided. First, reference to these criminalized activities requiring specific intent, but omitting specific intent as a requirement of proof in Minn. Stat. § 609.749, seems to cut in just the opposite direction the majority urges—that is, it once again underscores that the legislature knew exactly what it was doing when it required proof of specific intent with respect to particular conduct standing alone, without reference to a specific victim, but not where the statutory purpose is to protect a specific class of victims, i.e., targets of stalking or harassing conduct. In those cases, the legislature deemed it enough that the offensive conduct had occurred where there was proof of intent to act, coupled with proof that the conduct would have oppressed the reasonable person and it caused the victim to feel "oppressed, persecuted or intimidated."

Second, the first listed offense in fact *does* require specific intent:

A person who harasses another by committing any of the following acts is guilty of a gross misdemeanor:

(1) directly or indirectly *manifests a purpose or intent to injure the person, property, or rights of another* by the commission of an unlawful act.

(a) "Harassment" includes:
(1) repeated, intrusive, or unwanted acts, words, or gestures that are *intended to adversely affect the safety, security, or privacy of another,* regardless of the relationship between the actor and the intended target \* \* \*.

Minn.Stat. § 609.748 (1994) (emphasis added).

---

1. One need go no further than the statute preceding Minn.Stat. § 609.749 to find an example of numerous criminal statutes requiring proof of specific intent in Minnesota's criminal statutes. There the crime of "harassment" is defined as follows:

Subdivision 1. **Definition.** For the purposes of this section, the following terms have the meanings given them in this subdivision.

Minn.Stat. § 609.749, subd. 2 (emphasis added). Where the legislature employs the triggering language to require specific intent for one course of conduct but omits it for another, it seems particularly inappropriate for the court to now inject specific intent language.

Third, prohibited conduct described in paragraph (7) of Minn.Stat. § 609.749, subd. 2, clearly requires no specific intent either by its own terms or by reference to any other statute criminalizing the conduct:

> A person who harasses another by committing any of the following acts is guilty of a gross misdemeanor:
>
> * * * *
>
> (7) engages in any other harassing conduct that interferes with another person or intrudes on the person's privacy or liberty.

It is clear and unambiguous that the defendant's conduct alone triggers Minn.Stat. § 609.749 based upon the consequence of that conduct, similar to subdivision 1, without regard to whether the defendant intended to interfere with or intrude upon the victim. The majority would rewrite this provision too, presumably by adding "with the *intent* to interfere or intrude."

I also take issue with the majority's reasoning that because the legislature needed only to list the activity to be criminalized to create a general intent statute, when it required proof of intentional conduct it must have intended in addition, to require the higher degree of proof of specific intent. I see no support for this conclusion whatsoever. Raising the specter that unless a requirement of proof of specific intent is read into the statute one could be charged with an accidental stalking, as does the majority, misses the point as to why subdivision 1 requires proof of intentional conduct in the first instance. The statutory focus clearly is on protecting the victim and it was obviously the legislature's purpose to measure the nature of the defendant's conduct, not by the defendant's intended consequences, which might frequently be difficult to prove, but by how the hypothetical reasonable person would react to the defendant's intended conduct and by the victim's response. If the hypothetical reasonable person would feel oppressed, persecuted or intimidated by the defendant's intended conduct, and in fact the

victim does so react, the actor has violated Minn.Stat. § 609.749, if the conduct falls within any of the seven sections of subdivision 2. Application of the "reasonable person" test protects against criminalizing conduct that only an unreasonably sensitive or paranoid victim would find harassing, and therefore the risk of a truly innocent defendant falling within the ambit of Minn.Stat. § 609.749 is minimal. Further, stalking is a conduct of such personally intrusive nature that it seems not at all unreasonable for the legislature to deem that those who engage in such activity shall be subject to criminal prosecution because of their conduct alone, and without regard to the intended consequence. Proof that a reasonable person would feel oppressed, intimidated or persecuted by the defendant's conduct and that the victim so reacted would seem to be sufficient proof that the defendant intended that reaction.

Finally, the majority's conclusion that if it were to find only a requirement of general intent it might be unconstitutional is gratuitous and seems wholly unwarranted. No constitutional question was raised at the trial court level and on that basis the court of appeals specifically declined to provide constitutional review. We too should decline review because the constitutional issue was not raised at the trial court level and cannot be raised for the first time on appeal. *State v. Engholm,* 290 N.W.2d 780, 784 (Minn. 1980). While I have grave doubts about whether a statute that so explicitly defines the required proof of the offensive conduct, as does Minn.Stat. § 609.749, is unconstitutionally vague, I would consider the issue waived by the appellant for failure to timely raise it in the trial court.

I would therefore affirm the court of appeals.

COYNE, Justice.
I join Justice Stringer's dissent.

ANDERSON, Justice.
I join Justice Stringer's dissent.