STATE of Minnesota, Respondent,

v.

James Charles PEGELOW, Jr., Appellant.

No. A11–85.

Court of Appeals of Minnesota.

Jan. 9, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and Michael A. Welch, Forest Lake City Prosecutor, Forest Lake, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by KALITOWSKI, Presiding Judge; MINGE, Judge; and ROSS, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant James Charles Pegelow, Jr. challenges his conviction of gross-misdemeanor harassment in violation of Minn. Stat. § 609.749, subd. 2(a)(1). Appellant contends that the evidence was insufficient to support the jury's verdict because the state failed to present evidence from which the jury could reasonably conclude that he committed an unlawful act.

## FACTS

Pegelow was charged with gross-misdemeanor harassment under Minn.Stat. § 609.749, subd. 2(a)(1), arising out of an incident in which he allegedly posted nude and partially nude photographs of his former girlfriend, K.Z., in a men's restroom stall at K.Z.'s place of employment.

Pegelow and K.Z.'s relationship ended in August 2009. Around that time, K.Z. had nude and partially nude photographs taken of herself and presented them to Pegelow.

On January 29, 2010, around 7:00 p.m., an employee of the store where K.Z. worked found photographs of K.Z. posted in the men's restroom. At the start of K.Z.'s next shift, the store manager notified K.Z. and gave her the photographs. K.Z. was upset and embarrassed and called the police. K.Z. indicated to the police that she believed Pegelow had posted the images because he was the only person she had given them to. The police and K.Z. watched the store security tape from January 29, 2010, and identified Pegelow walking into the store at approximately 5:18 p.m., entering the men's restroom, and leaving the store at approximately 5:26 p.m.

The state charged Pegelow with gross-misdemeanor harassment under section 609.749, subdivision 2(a)(1). At Pegelow's jury trial, the state argued that Pegelow's conduct satisfied the statutory definition of harass and that the jury could infer that, by posting the photos, Pegelow intended to humiliate K.Z. and violate her right to privacy. Defense counsel argued that posting nude photos on a restroom wall is not specifically unlawful.

The district court provided the following instructions to the jury:

> The elements of a harassing crime are:
>
> First, the defendant, directly or indirectly, manifested a purpose or intent to injure the person, property, or rights of another by the commission of an unlawful act.
>
> Second, the defendant knew or had reason to know that the conduct would cause the victim under the circumstances to feel frightened, threatened, oppressed, persecuted or intimidated. The State is not required to prove that the defendant intended to cause such a reaction by [K.Z.].
>
> Third, [K.Z.] felt frightened, threatened, oppressed, persecuted, or intimidated.

After beginning deliberations, the jury indicated to the court that it was confused about the first and second elements of the statute, but the court declined to give further instructions. The jury found Pegelow guilty.

## ISSUE

Under Minn.Stat. § 609.749, subd. 2(a)(1), is evidence of conduct that meets the definition of harass sufficient for a jury to find that a defendant manifested a purpose or intent to injure the person, property, or rights of another "by the commission of an unlawful act"?

## ANALYSIS

■ When considering a claim of insufficient evidence, our review "is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn.2004). When the dispositive issue is one of statutory construction, it is a question of law subject to de novo review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996).

Minn.Stat. § 609.749 provided, in pertinent part:

> Subdivision 1. Definition. As used in this section, "harass" means to engage in intentional conduct which:
>
> (1) the actor knows or has reason to know would cause the victim under the circumstances to feel frightened, threatened, oppressed, persecuted, or intimidated; and
>
> (2) causes this reaction on the part of the victim.
>
> Subd. 1a. No proof of specific intent required. In a prosecution under this section, the state is not required to prove that the actor intended to cause the victim to feel frightened, threatened, oppressed, persecuted, or intimidated . . . .
>
> Subd. 2. Harassment and stalking crimes. (a) A person who harasses another by committing any of the following acts is guilty of a gross misdemeanor:
>
> (1) directly or indirectly manifests a purpose or intent to injure the person, property, or rights of another by the commission of an unlawful act;
>
> (2) stalks, follows, monitors, or pursues another, whether in person or through technological or other means;
>
> (3) returns to the property of another if the actor is without claim of right to the property or consent of one with authority to consent;

(4) repeatedly makes telephone calls, or induces a victim to make telephone calls to the actor, whether or not conversation ensues;

(5) makes or causes the telephone of another repeatedly or continuously to ring;

(6) repeatedly mails or delivers or causes the delivery by any means, including electronically, of letters, telegrams, messages, packages, or other objects; or

(7) knowingly makes false allegations against a peace officer concerning the officer's performance of official duties with intent to influence or tamper with the officer's performance of official duties.

Minn.Stat. § 609.749, subds. 1–2(a) (2008).

The state argues that evidence of an unlawful act is unnecessary because subdivision 2(a)(1) requires only that the defendant manifest a purpose or intent to injure the person, property, or rights of another by the commission of an act that meets the definition of harass. Pegelow contends that subdivision 2(a)(1) requires the state to prove that he committed "an unlawful act" that is separate from the definition of harass in subdivision 1. Because Pegelow's construction is supported by the plain language of the statute and legislative intent, and is required to avoid constitutional infirmity, we agree.

■ "If the meaning of a statute is unambiguous, we interpret the statute[ ] ... according to its plain language." *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn.2010); *see* Minn.Stat. § 645.16 (2010). If the statute is ambiguous, this court applies other canons of construction to discern the legislature's intent. *Brua*, 778 N.W.2d at 300. These may include the occasion and necessity for the law, the circumstances of enactment, the object to be attained, and the

consequences of a particular interpretation. Minn.Stat. § 645.16. A statute should be interpreted to give effect to all of its provisions, and "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999).

■ Minn.Stat. § 609.749 (2008) does not define "unlawful act." But if the unlawful-act requirement is satisfied by an act that only meets the definition of harass, the statutory language, "by the commission of an unlawful act," is rendered superfluous. And section 609.749, subdivision 2(a)(1), would be circular: "[a] person who *harasses* another by committing any of the following acts is guilty of a gross misdemeanor ... manifest[ing] a purpose or intent to injure the person, property, or rights of another by the commission of [*the harassing act* ]." Accordingly, we conclude that the plain language of the statute requires evidence of an act that is unlawful independent of section 609.749, subdivision 1.

Pegelow further argues that section 609.749 does not criminalize conduct that meets the subdivision 1 definition of harass unless the conduct also satisfies at least one of the provisions in subdivision 2(a). *See* Minn.Stat. § 609.749, subds. 1, 2. Therefore, conduct that meets the subdivision 1 definition of harass is not by itself unlawful and cannot be the requisite "unlawful act." Because Minnesota precedent indicates that Minn.Stat. § 609.749 must be construed in this manner to avoid unconstitutional overbreadth or vagueness, we agree.

■ A statute is overbroad on its face if it prohibits constitutionally protected activity, in addition to activity that may be prohibited without offending constitutional rights. *State v. Century Camera, Inc.*, 309

N.W.2d 735, 740 (Minn.1981) (citing *Grayned v. City of Rockford,* 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972)). In accordance with due process, the legislature must "define a criminal offense with sufficient definiteness and certainty that 'ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *State v. Reha,* 483 N.W.2d 688, 690–91 (Minn.1992) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). We are required to place a construction on a statute that will render it constitutional, if at all possible. *In re Commitment of Giem,* 742 N.W.2d 422, 429 (Minn.2007).

In *State v. Machholz,* 574 N.W.2d 415, 420–21 (Minn.1998), the supreme court struck down the previous subdivision 2(7) of section 609.749, a catch-all provision which provided that it was unlawful to "engage[ ] in any other harassing conduct that interferes with another person or intrudes on the person's privacy or liberty." Minn.Stat. § 609.749, subd. 2(7) (1996). The supreme court explained that the provision was overbroad on its face because it swept "in a whole spectrum of constitutionally protected activity" and "criminalize[d] day-to-day interactions between people in which an individual deliberately engages in expressive activity that is intended to oppress, persecute, or intimidate, and which may interfere with another's privacy or liberty." *Id.* at 420.

Subsequently, in *State v. Stockwell,* 770 N.W.2d 533, 539–40 (Minn.App.2009), this court upheld subdivision 2(a)(2), which provides that it is unlawful to "stalk[ ], follow[ ], monitor[ ], or pursue[ ] another, whether in person or through technological or other means." Minn.Stat. § 609.749, subd. 2(a)(2) (2006). We distinguished subdivision 2(a)(2) from the provision at issue in *Machholz,* explaining that it is limited to particular conduct—stalking and following—and so is not facially overbroad. *Stockwell,* 770 N.W.2d at 539. We also held that the statute was not void for vagueness because it included three elements: (1) the act of stalking, following, monitoring or pursuing; (2) engaging in intentional conduct that the actor knows or has reason to know would cause the victim to feel frightened or intimidated; and (3) actually causing this reaction. *Id.* at 541. Thus, mere "following" was not proscribed and ordinary persons could not inadvertently violate the statute. *Id.* at 541.

*Machholz* informs our interpretation here. If the subdivision 2(a)(1) "unlawful act" requirement may be satisfied by conduct that is not otherwise unlawful but meets the definition of harass, then subdivision 2(a)(1) reaches the same broad range of intentional conduct as the provision deemed overbroad in *Machholz.* 574 N.W.2d at 420; *compare* Minn.Stat. § 609.749, subd. 2(7) (1996) (providing that it is a crime to "engage[ ] in any other harassing conduct that interferes with another person or intrudes on the person's privacy or liberty"), *with* Minn.Stat. § 609.749, subd. 2(a)(1) (providing that it is a crime to "directly or indirectly manifest[ ] a purpose or intent to injure the person, property, or rights of another by the commission of [harassing conduct]"). Subdivision 2(a)(1), unlike subdivision 2(7), requires intent to injure, but in *Machholz* the court found "deliberate[ ] ... expressive activity that is intended to oppress, persecute, or intimidate" to be constitutionally protected conduct. *Machholz,* 574 N.W.2d at 420. In contrast to the provision challenged in *Stockwell,* subdivision 2(a)(1) does not define particular acts which, when committed in conjunction with intentional harassing conduct, constitute a crime. Indeed, under the state's view, *any* conduct that manifests an intent to injure

and meets the harassment definition is sufficient. But if the "unlawful act" is independently unlawful, ordinary persons will understand what conduct is prohibited, and due process concerns are alleviated. Accordingly, in light of our obligation to construe the statute to reach a constitutional result, we conclude that the "unlawful act" requirement of subdivision 2(a)(1) is not satisfied solely by establishing that the conduct meets the definition of harass.

Because the plain language of the statute supports our conclusion that the statute requires evidence of an unlawful act, we need not review legislative intent. But we do so to address the state's argument that the legislature intended to criminalize conduct that meets the subdivision 1 definition of harass and did not intend that the defendant must also violate a separate provision of law to violate Minn.Stat. § 609.749, subd. 2(a)(1).

Minn.Stat. § 609.749 was enacted in 1993 to punish the crime of stalking. *See* 1993 Minn. Laws ch. 326, art. 2, § 22, at 2010–11; *State v. Orsello,* 554 N.W.2d 70, 71–72 (Minn.1996) (noting that many states enacted anti-stalking laws following the 1989 murder of a television actress), *superseded by statute on other grounds,* Minn. Stat. § 609.749, subd. 1a. At that time, state legislatures anticipated constitutional challenges to stalking statutes on the grounds of overbreadth and vagueness, and so it is reasonable that section 609.749, subdivision 2(a)(1), was drafted with the intent to avoid the constitutional concerns discussed above. *See* Kenneth R. Thomas, Cong. Research Serv., 92–735A, *Anti–Stalking Statutes: Background & Constitutional Analysis* 5–10 (1992); Cassandra Ward, Note, *Minnesota's Anti–Stalking Statute: A Durable Tool to Protect Victims from Terroristic Behavior,* 12 Law & Ineq. 613, 639–41 (1993) (discussing constitutional challenges to statutes criminalizing stalking).

■ The legislature's intent may also be discerned from the surrounding provisions. *See State v. Randolph,* 800 N.W.2d 150, 154 (Minn.2011) (providing that each section of a statute should be interpreted in light of the surrounding sections). Subdivision 2(a) sets forth seven acts, each of which, when committed in conjunction with harassment defined in subdivision 1, constitute the crime of gross-misdemeanor harassment. Minn.Stat. § 609.749, subd. 2(a). With the exception of clause (2), which proscribes the "new" crime of stalking, each of the acts described in the remaining clauses are, or were at the time of enactment, independently unlawful. Clauses (3) through (6) describe acts that were unlawful in Minnesota when section 609.749 was enacted. *See Orsello,* 554 N.W.2d at 75. For example, clause (3) describes conduct that was a violation of the then-existing trespass statute. Minn. Stat. § 609.605, subd. 1(b)(7) (1992) (providing that an individual violates the statute by "return[ing] to the property of another with the intent to harass, abuse, or threaten another, after being told to leave the property and not to return"). Clauses (4) and (5) follow the then-existing obscene or harassing phone call statute, which made it a crime to "repeatedly make[] telephone calls, whether or not conversation ensues, with intent to abuse, threaten, or harass" or to "[m]ake[] or cause[] the telephone of another repeatedly or continuously to ring with intent to harass any person at the called number." Minn.Stat. § 609.79, subd. 1(1)(b), (c) (1992). It was also already a crime to "repeatedly use[] the mails or deliver[] letters, telegrams, or packages ... with the intent to harass, abuse, or threaten." Minn.Stat. § 609.795, subd. 1(3) (1992). Clause (7) was added in 1998 and so is not relevant as to the

legislature's intent in 1993. *See* 1998 Minn. Laws ch. 367, art. 2, § 23, at 696. Nonetheless, the act of knowingly making false allegations against a police officer is also independently unlawful under the reporting-police-misconduct statute. *See* Minn.Stat. § 609.505, subd. 2(a) (2010).

The state also argues that the legislature included the phrase "unlawful act" to prevent criminalizing harassing conduct that is permitted or excepted by law. We disagree because Minn.Stat. § 609.749 specifically sets forth such exceptions at subdivision 7. Minn.Stat. § 609.749, subd. 7 ("Conduct is not a crime under this section if it is performed under terms of a valid license, to ensure compliance with a court order, or to carry out a specific lawful commercial purpose or employment duty, is authorized or required by a valid contract, or is authorized, required, or protected by state or federal law or the state or federal constitutions.").

Accordingly, inferences of legislative intent also support the conclusion that the subdivision 2(a)(1) "unlawful act" requirement is separate from the subdivision 1 definition of harass.

We conclude that, to convict a defendant of gross-misdemeanor harassment pursuant to Minn.Stat. § 609.749, subd. 2(a)(1), the jury must determine that the defendant committed an act that is unlawful independent of section 609.749. The state here was required to introduce some evidence from which the jury could reasonably find that Pegelow's act was unlawful. We offer no opinion as to whether such evidence could have been presented because it is undisputed that the state did not indicate if or how the act of posting photographs was unlawful and offered no evidence from which the jury could so conclude. The jury was thus required to speculate as to what the law required. Accordingly, the jury's determination that Pegelow committed an unlawful act necessarily was based on speculation, rather than evidence, and the conviction must be reversed. *See State v. Brown,* 732 N.W.2d 625, 628–29 (Minn.2007) (reversing a defendant's conviction because, absent speculation, there was no evidence as to an element of the offense).

Finally, Pegelow argues that (1) the evidence was insufficient for the jury to find that he manifested a purpose to injure K.Z.'s person, property or rights and (2) the jury instructions were plainly erroneous. Because Pegelow's sufficiency-of-the-evidence argument is dispositive, we need not reach these additional arguments.

### DECISION

Because the state offered no evidence from which the jury could reasonably find that Pegelow committed an unlawful act, the evidence was insufficient to support his conviction of gross-misdemeanor harassment under Minn.Stat. § 609.749, subd. 2(a)(1).

**Reversed.**