ROSEMARY KOLLODGE, A MINOR, BY FRANK WROBEL, HER FATHER AND NATURAL GUARDIAN, AND ANOTHER v. F. AND L. APPLIANCES, INC., AND ANOTHER.

80 N. W. (2d) 62.

December 21, 1956—No. 36,694.

*Eugene W. Hoppe,* for appellants.

*Thomas J. Battis* and *Murnane & Murnane,* for respondents.

DELL, CHIEF JUDGE.

Action for personal injuries sustained by Rosemary Wrobel Kollodge, a minor, allegedly resulting from the negligence of the defendant Harris; and an action by her father, Frank Wrobel, for medical expenses and loss of services. Plaintiffs appeal from an order denying their alternative motion for judgment notwithstanding the verdict or for a new trial.

On July 20, 1953, Rosemary Kollodge, hereinafter referred to as the plaintiff, was employed as a typist in the state highway department located at the northeast corner of the intersection of University and Syndicate Avenues in St. Paul. University Avenue runs in a general easterly and westerly direction, and the intersection involved is protected by traffic signals on all four corners. At noontime the plaintiff, who was then 17 years old and unmarried, and some of her girl friends went across the street to eat their lunch on a lawn

located at the southwest corner of the intersection. At approximately 12:30 p. m. they began to return to work in staggered numbers. Three or four girls were ahead of the plaintiff and five or six behind her. One of the girls walked with the plaintiff on the latter's immediate left.

The two girls started to cross University Avenue on the east crosswalk, proceeding from the south curb to the north. When they left the curb they were facing a green signal light. University Avenue is 89 feet wide from the north curb to the south curb, and there is a safety island approximately 30 feet from the north curb of University. A semitruck was stopped facing in a westerly direction just north of and on the right side of the safety island. The plaintiff did not look at the signal light after she started to cross until she was in front of the semitruck when she claims she saw that the light had changed to red. The driver of the semitruck motioned to the two girls to continue ahead, which they did. As the plaintiff continued past the front of the semitruck, she was struck by a pickup truck owned by the defendant F. and L. Appliances, Inc., and driven by the defendant Harris. Plaintiff testified that the defendants' pickup truck was traveling between 30 and 40 miles an hour when she first saw it.

The defendant Harris testified that he was traveling between 20 and 25 miles an hour and that the plaintiff "popped out" in front of his truck. He said that he thought the semitruck was standing there because it had stopped for the red light and had not yet started up; that as he approached the standing semitruck on his left hand side he saw the light change to green and proceeded ahead.

■ The plaintiffs contend that the trial court erred to their substantial prejudice in refusing to instruct the jury in accordance with the second paragraph of M. S. A. 169.21, subd. 2. The first two subdivisions of this section provide:

Subd. 1. "Pedestrians shall be subject to traffic-control signals at intersections as heretofore declared in this chapter, but at all other places pedestrians shall be accorded the privileges and shall be subject to the restrictions stated in sections 169.21 and 169.22.

"Subd. 2. Where traffic-control signals are not in place or in operation the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. This provision shall not apply under the conditions as otherwise provided in this subdivision.

"*When any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle.*

"It is unlawful for any person to drive a motor vehicle through a column of school children crossing a street or highway or past a member of a school safety patrol, while the member of the school safety patrol is directing the movement of children across a street or highway and while the school safety patrol member is holding his official signal in the stop position." (Italics supplied.)

Defendants argue that, considering § 169.21 in its entirety, it is clear that the requested paragraph refers only to uncontrolled or unprotected crosswalks and consequently has no application under the facts of the instant case.

It is a cardinal rule of statutory construction that a particular provision of a statute cannot be read out of context but must be taken together with other related provisions to determine its meaning.[1] In Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 409, 10 N. W. (2d) 406, 415, 147 A. L. R. 945, we said:

"Parts of a statute are not to be viewed in isolation. A statute should be construed as a whole. Words and sentences are to be

---

[1]See, e. g., Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007; First Trust Co. v. Kansas City Life Ins. Co. (8 Cir.) 79 F. (2d) 48, 52; Crawford, Statutory Construction, § 165.

understood in no abstract sense, but in the light of their context, which communicates meaning and color to every part."

The paragraph here involved, standing alone, makes no distinction between controlled or uncontrolled crosswalks. However, when construed with reference to the other provisions of § 169.21, it is apparent that it was intended to be limited to crosswalks where traffic-control signals are not in operation.

Section 169.21, subd. 1, quoted above, provides, in effect, that the rights and duties of pedestrians at controlled intersections are to be found in the preceding sections dealing with traffic-control devices,[2] and that pedestrians' rights and duties at unprotected crossings are defined in the provisions immediately following. The next subdivision spells out what those rights and obligations are, specifically limiting their application to situations "Where traffic-control signals are not in place or in operation * * *." The second paragraph of this same subdivision, which is the instruction sought by the plaintiffs, then prohibits overtaking and passing a vehicle which has stopped at a crosswalk to permit a pedestrian to cross the roadway. This latter paragraph necessarily takes on the aspect of the rest of the section and subdivision. We can only conclude that the provision implicitly refers to vehicles which have stopped *as required by the preceding paragraph,* that is, for pedestrians at uncontrolled crosswalks.[3] The contrary interpretation suggested by the plaintiffs, although perhaps desirable from the standpoint of safeguarding pedestrians, would give the provisions a far broader scope than its context permits.

The plaintiffs, however, rely upon two provisions in § 169.21 which they claim support their contention. First, they cite the last sentence of the first paragraph of subd. 2:

---

[2]See, M. S. A. 169.06.

[3]This reference to the preceding paragraph is expressly made in some statutes based on the Uniform Vehicle Code. See, e. g., Oregon Rev. Stat. § 483.210(3), which provides:

"Whenever any vehicle has stopped *in compliance with this section* * * *." (Italics supplied.)

"* * * This provision shall not apply under the conditions as otherwise provided *in this subdivision."* (Italics supplied.)

Plaintiffs argue that by this sentence the legislature intended to exclude the following two paragraphs from the first paragraph and make them applicable without reference to the limitations of the first paragraph. An examination of the comparable language in the Uniform Vehicle Code,[4] upon which our statute is based, and similar provisions in other jurisdictions[5] indicates that the "conditions" to which the sentence was apparently intended to refer are those stated in § 169.21, subd. 3, relating to the crossing of a street where a pedestrian tunnel or overwalk is provided. Under such circumstances a pedestrian does not have the right-of-way.[6] However, as presently worded, the sentence is meaningless, since there are no "conditions" in subd. 2 under which the first paragraph could reasonably be said not to apply.[7]

The plaintiffs also rely upon the third paragraph of subd. 2, which gives school children the right-of-way while a safety patrol member is holding his sign in the "stop" position. Since this section obviously applies to any street crossing, whether at a controlled

---

[4]Promulgated by the National Committee on Uniform Traffic Laws and Ordinances, 1954. Section 11-502(c) of the uniform code provides:

"Paragraph (a) shall not apply under the conditions stated in section 11-503(b)."

Section 11-503(b) is identical with M. S. A. 169.21, subd. 3, par. 2, quoted in footnote 6, *infra.*

[5]See, e. g., Code of Laws of S. C. 1952, §§ 46-433, 46-435; Vernon's Texas Civil Stat. art. 6701d, §§ 77(a), 78(b); W. Va. Code Ann. 1955, §§ 1721(368) (a), 1721(369) (b).

[6]M. S. A. 169.21, subd. 3, par. 2, provides:

"Any pedestrian crossing a roadway at a point where a pedestrian tunnel or overhead pedestrian crossing has been provided shall yield the right of way to all vehicles upon the roadway."

[7]The only "conditions" specified in subd. 2 relate to a vehicle stopped at a crosswalk to permit a pedestrian to pass and to school children crossing the street. It would be absurd to find that under either of these conditions a pedestrian no longer has the right-of-way given to him by the first paragraph.

intersection or not, it is argued that § 169.21 does not deal exclusively with the rights and duties of pedestrians at *uncontrolled* crosswalks. This particular paragraph is not a part of the Uniform Vehicle Code but a special provision added by our legislature. In this light its broader application is easily reconcilable, and we do not feel should be used to defeat the otherwise clear intent of the legislature to limit the scope of the preceding paragraph.

We must conclude that the paragraph requested as an instruction by the plaintiffs had no application under the facts of the instant case and that the request was properly denied.

■ The plaintiffs also contend that the trial court erred in giving the following instruction:

"The driver of a vehicle may overtake and pass upon the right of another vehicle upon a street or highway with unobstructed pavement not occupied by parked vehicles of sufficient width for two or more lines of moving vehicles in each direction."

Prior to giving this instruction, the court read from applicable statutes dealing with the rights of pedestrians at controlled intersections and charged the jury:

"* * * Since the evidence is not disputed which shows that the plaintiff entered the crosswalk with the green light in her favor, she was entitled to the right of way across the entire avenue, and the defendant driver was prima facie negligent in failing to yield the right of way to her."[8]

The court then went on to explain the meaning of prima facie negligence, pointing out that the defendant must be considerd negligent unless good cause or excuse for the deviation was shown. Then, after briefly commenting on contributory negligence, the instruction complained of was given.

---

[8]M. S. A. 169.06, subd. 5(a)(1), provides:

"* * * vehicular traffic shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection at the time that signal [green] is exhibited."

The instruction involved was taken from § 169.18, subd. 4(b).[9] Subd. 4(d) of the same section provides, in part:

"The driver of a vehicle may overtake and pass another vehicle upon the right *only under conditions permitting such movement in safety.*" (Italics supplied.)

While the instruction given was appropriate under the facts in this case, it is clear that, without the qualifying provision of subd. 4(d), quoted above, the jury could easily have been left with the impression that it was permissible for the defendant Harris to pass the semitruck on the right, although by doing so he violated the plaintiff's right-of-way. The sequence in which the instructions were given could well have added to this misconception and rendered ineffective the instruction that Harris was prima facie negligent. As we said in Zurko v. Gilquist, 241 Minn. 1, 5, 62 N. W. (2d) 351, 354:

"In construing a charge as a whole, its adequacy in correctly setting forth controlling principles of law is to be measured by the meaning it reasonably conveys to the jurors who hear it only once and have no opportunity to examine it in written form. Even though a jury charge may by close inspection be found to be technically correct in its entirety, a new trial should be granted if its impact upon the jury is likely to convey, and reasonably does convey, an erroneous understanding of controlling principles of law."

We are of the opinion that the instruction, under the circumstances of this case, was incomplete, misleading, and conveyed an erroneous conception of the controlling principles of law.[10]

■ The defendants argue that the plaintiff was guilty of contributory negligence as a matter of law, and hence the alleged errors,

[9]This section applies to passing a standing car headed in the same direction as well as to one actually moving in the same direction. Geisen v. Luce, 185 Minn. 479, 242 N. W. 8.

[10]Rule 51 of the Rules of Civil Procedure provides, in part:

"* * * An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not otherwise called to the attention of the court."

even if established, could not have been prejudicial. Under the evidence the question of the plaintiff's contributory negligence was sufficiently doubtful to go to the jury.

The order of the trial court is reversed and a new trial granted. Reversed.