STATE of Minnesota, Respondent,

v.

Steven Mark LOGE, Appellant.

No. C9–98–842.

Court of Appeals of Minnesota.

Jan. 19, 1999.

Review Granted March 30, 1999.

Michael A. Hatch, Attorney General, St. Paul, Steven R. Schwab, Albert Lea City Attorney, Albert Lea, for respondent.

John M. Stuart, State Public Defender, Scott G. Swanson, Assistant State Public Defender, Minneapolis, for appellant.

Considered and decided by TOUSSAINT, Presiding Judge, RANDALL, Judge, and HOLTAN, Judge.

## O P I N I O N

HARVEY A. HOLTAN, Judge.*

Steven Mark Loge was convicted under Minn.Stat. § 169.122, subd. 3, of keeping an open bottle containing intoxicating liquor in an automobile. At trial, Loge testified that he did not know the bottle was in the vehicle. The trial court nonetheless convicted Loge, concluding that subdivision 3 of the statute does not require proof that the driver acted knowingly. On appeal from the judgment of conviction, Loge challenges the trial court's conclusion. Because we concur that Minn. Stat. § 169.122, subd. 3, sets forth a strict liability offense, we affirm.

### FACTS

In September 1997, Albert Lea police officers stopped Steven Mark Loge for speeding. During a routine search of the automobile, the officers found a nearly empty bottle of beer in a brown paper bag underneath the front passenger seat. Based on this finding, they charged Loge with keeping an open bottle containing intoxicating liquor in an automobile, in violation of Minn.Stat. § 169.122, subd. 3.

At trial, Loge testified that the car he was driving belonged to his father and that he, as well as others, had driven it for the past two weeks. He also testified that the open bottle did not belong to him and that he did not know it was in the car.

Notwithstanding Loge's testimony, the trial court convicted him, reasoning that Minn. Stat. § 169.122, subd. 3, "creates an absolute liability for Mr. Loge to inspect and determine[,] when he is going to operate the pickup truck[,] whether there are any containers that would violate the open receptacle law in Minnesota."

On appeal, Loge claims the trial court erred in concluding that Minn.Stat. § 169.122, subd. 3, creates a strict liability

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. Art. VI, § 10.

offense. The state agrees with Loge and asks that the case be remanded for a determination of whether Loge knew the open bottle was in the car.

## ISSUE

Does Minn.Stat. § 169.122, subd. 3 (1996), make the driver of a private motor vehicle liable for unknowingly keeping in the vehicle, while on a public highway, an open bottle containing intoxicating liquor?

## ANALYSIS

■ This appeal raises an issue of statutory interpretation. The interpretation of statutes is a question of law, which this court reviews de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

Minn.Stat. § 169.122, subd. 2 (1996), imposes a general rule applicable to all occupants of a motor vehicle. It provides that "[n]o person shall have in possession while in a private motor vehicle upon a public highway, any bottle or receptacle containing intoxicating liquor * * * which has been opened." *Id.* Possession means "either that the person had actual possession of the bottle or receptacle or that the person consciously exercised dominion and control over the bottle or receptacle." *Id.* We agree with Loge that the legislature defined "possession" in a way that makes it clear that subdivision 2 of the statute requires proof that the occupants acted knowingly.

In contrast, subdivision 3, under which Loge was charged, imposes a limited rule applicable only to the owner of a private motor vehicle and to the driver if the owner is not present. It makes it unlawful for either one of them to "keep or allow to be kept in a motor vehicle when such vehicle is upon the public highway any bottle or receptacle containing intoxicating liquors * * * which has been opened." Minn.Stat. § 169.122, subd. 3 (1996). We conclude that unlike subdivision 2, subdivision 3 does not require proof of mens rea. Instead, it imposes an affirmative duty on the owner and the driver of a private motor vehicle, without regard to fault, to ensure compliance with the open bottle law. Had the legislature

intended to subject the owner and the driver to the same liability as the occupants, it would have done so in subdivision 2.

■ Although strict liability offenses are disfavored, *Staples v. United States*, 511 U.S. 600, 606, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994), states may create strict liability by defining criminal offenses without an element of scienter, *see, e.g., State v. Morse*, 281 Minn. 378, 380–82, 161 N.W.2d 699, 700–02 (1968) (excluding mistake of age as a defense to sexual conduct between an adult and a child under the age of consent). To impose criminal liability for conduct unaccompanied by fault, however, "the legislative intent to do so should be clear." *State v. Neisen*, 415 N.W.2d 326, 329 (Minn.1987).

■ The legislature's intent to impose strict liability in this case is clear. A reading of Minn.Stat. § 169.122 (1996) as a whole suggests that by carving a special rule for the owner and the driver of a private motor vehicle, rather than including them within the general prohibition in subdivision 2, the legislature intended, in the exercise of its police power for the protection of the public at large, to distinguish between the liability of occupants, who do not have charge of the automobile, and the liability of the owner and the driver, who do. Specifically, the legislature intended to hold the owner and the driver strictly liable for failing to ascertain that the car contained no open bottles before it entered a public highway, while holding other occupants liable only if they acted knowingly.

The plain language of the statute supports the same inference. Subdivision 3 makes it unlawful for the owner and the driver of an automobile "to keep or allow to be kept" in an automobile an open bottle containing intoxicating liquor. Minn.Stat. § 169.122, subd. 3. The legislature has not traditionally used the words *keep* or *allow* to indicate that criminal intent is an element of the offense. *See, e.g.,* Minn.Stat. § 609.02, subd. 9(1) (1996) ("When criminal intent is an element of a crime in this chapter, such intent is indicated by the term 'intentionally,' the phrase 'with intent to,' the phrase 'with intent that,' or some form of the verbs 'know'

or 'believe.'"). "To keep" means to "have charge" of a thing, person, or animal. 1 *The New Shorter Oxford English Dictionary* 1476 (Lesley Brown ed., 1993). A person can keep or "have charge" of something without necessarily knowing of it. By having charge of an automobile, for example, the owner and the driver "have charge" of its contents, whether or not they know of them. Thus, the word "keep" does not implicitly incorporate a mens rea requirement into Minn.Stat. § 169.122, subd. 3.

The same is true of the word *allow.* In a legal setting, *allow* means "to approve by not objecting." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 45 (2d ed.1995). It does not mean to permit. *Id.* In fact, "[t]he words *allow* and *permit* have an important connotative difference. *Allow* * * * suggests merely the absence of opposition * * *. In contrast, *permit* suggests affirmative sanction or approval." *Id.* Thus, the owner and the driver of an automobile *allow* the presence of an open bottle simply by failing to object to it, whether or not they know the bottle is in the vehicle. The legislature's choice of the word *allow,* therefore, does not imply a knowledge requirement into subdivision 3. Had the legislature wanted to make knowledge of the open bottle an element of the offense, it would have chosen the word *permit* rather than the word *allow.*

Finally, Minn.Stat. § 169.122, subd. 3, like other provisions within the same chapter, is a regulatory statute designed to promote highway safety. The express language of subdivision 3 does not require proof of mens rea on the driver's part any more than other traffic regulations within the same chapter do. *See, e.g.,* Minn.Stat. § 169.14 (1996) (forbidding drivers from exceeding speed restrictions); Minn.Stat. § 169.34 (1996) (prohibiting drivers from parking a vehicle in certain specified locations including a public or private driveway and an intersection); Minn.Stat. § 169.48 (1996) (requiring vehicles to display specific lighted lamps and illuminating devices). The full protection regulatory statutes are designed to afford could not be secured if knowledge was a necessary element of the offense. Evasion would be so easy that the statutes would practically fail.

It is reasonable to assume, therefore, that had the legislature intended to depart from its standard practice with respect to regulatory statutes and make knowledge of the open bottle an element of the offense, it would have done so expressly by forbidding the owner and the driver from *knowingly* or *intentionally* keeping or allowing to be kept in a motor vehicle an open bottle containing intoxicating liquor.

The burden subdivision 3 imposes on the owner and the driver of an automobile is minimal compared to the mischief the legislature intended to prevent, namely, drinking intoxicating beverages while driving. The magnitude of the problems associated with drinking while driving fully justifies the minimal burden the legislature placed on the owner and the driver. Admittedly, subdivision 3 exposes unsuspecting owners and drivers to criminal liability. On occasion, this exposure may result in the conviction of what may be viewed as an innocent person. The greater public good, however, justifies an occasional, but only apparent, injustice. Moreover, any injustice resulting from the imposition of strict liability could be effectively remedied at the time of sentencing. Strict liability, therefore, is not too high a price to pay for public safety and a legitimate legislative purpose. Thus, despite the severity of excluding lack of knowledge as a defense, we conclude that Minn.Stat. § 169.122, subd. 3, creates a strict liability offense.

## DECISION

The evidence, which establishes that officers saw an open bottle containing intoxicating liquor underneath the passenger seat of the automobile Loge was driving on a public highway, is sufficient to support Loge's conviction under Minn.Stat. § 169.122, subd. 3. Proof that Loge knew the bottle was in the automobile is not required to sustain the conviction.

**Affirmed.**

RANDALL, Judge (dissenting).

I respectfully dissent. I conclude that Minn.Stat. § 169.122, subd. 3 (1998), has to include a scienter element. The only way this subdivision can read to include basic

fairness and due process is that the driver/owner must knowingly allow an open bottle to be kept in the car.

The majority decides that by enacting both Minn.Stat. § 169.122, subd. 2 (1998) and subd. 3, the legislature must have intended to impose strict liability on owners and drivers for a subdivision 3 offense. The majority reasons that because any person who possesses an open bottle in a motor vehicle violates subdivision 2, and because a nonpossessing driver or owner does not violate subdivision 2 if a passenger possesses an open bottle, the most logical inference is that subdivision 3 must mean there is strict criminal liability on owners or drivers (when the owner is *not* present) if they "keep," or "allow to be kept," an open bottle in a vehicle, *whether they know it is there or not.*

The majority concludes that subdivision 3 makes innocent drivers/owners liable if their passengers violate subdivision 2. Contrary to the majority's analysis, I conclude that the fact the legislature separated these two provisions *does not equate* to legislative intent to impose strict liability on innocent drivers/owners. Subdivision 3 merely states, and states quite plainly and clearly, that if a driver or owner is knowledgeable about someone else in the car possessing an open bottle, then the driver or owner has criminal liability, even if the driver or owner himself does not technically possess the open bottle.

The plain meaning of Minn.Stat. § 169.122, subd. 3, indicates that the legislature intended to criminalize only the knowing possession of an open bottle in a motor vehicle. *See Tuma v. Commissioner of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986) (stating if statute's language is clear and unambiguous, court may not attempt to construe or interpret but must "give effect to the statute's plain meaning"). It is unlawful under subdivision 3 "to keep or allow to be kept" an open bottle containing intoxicating liquor in a motor vehicle. Minn.Stat. § 169.122, subd. 3. The phrase "to keep or allow to be kept" requires knowledge by the actor. Logic and fairness mandate only that conclusion. To

"keep" is to "maintain, or cause to stay or continue in a specified condition, position, etc." *Webster's New Universal Unabridged Dictionary* 997 (Jean L. McKechnie ed., 2d ed.1983). To "allow" is "to permit." *Id.* at 49. One cannot "cause" or "permit"[1] something to stay in a specified condition if one has absolutely no knowledge that it exists. The statute's plain language incorporates a mens rea requirement. *See* Minn.Stat. § 645.08(1) (1998) ("Words and phrases are construed according to rules of grammar and according to their common and approved usage * * * .").

I conclude that Minn.Stat. § 169.122, subd. 3, is clear on its face. But if, for the sake of argument, we conclude the statute is ambiguous, then a reviewing court should determine the probable legislative intent of an ambiguous statute. *See Tuma*, 386 N.W.2d at 706 (stating court must determine probable legislative intent of ambiguous statute). I find that subdivision 3 is clear and requires knowledge on the part of the driver or owner for that person to be criminally liable. But if the statute is ambiguous, the probable legislative intent still requires scienter or actual knowledge, as legislatures do not intend an absurd or unreasonable result. See Minn. Stat. § 645.17(1) (1998) (legislature does not intent absurd or unreasonable result).

A determination that Minn.Stat. § 169.122, subd. 3, imposes strict criminal liability on innocent drivers and owners would lead to a variety of unreasonable results the legislature could not have intended. For example, it would expose all unsuspecting drivers, young and old, to criminal liability if they offer a ride to a friend or colleague who happens to have a concealed open bottle on his or her person. *See City of Hutchinson v. Weems*, 173 Kan. 452, 249 P.2d 633, 638 (Kan.1952) (determining Kansas open bottle statute is not strict-liability crime and listing possible unreasonable results of imposing strict liability, including offering ride to acquaintance who, unbeknownst to driver, is carrying open bottle in bag). It would also expose innocent parents or other adults to

---

1. Even taking, at face value, the majority's linguistic argument that "allow" means "to approve by not objecting" or "merely the absence of opposition," I can only note that a person cannot object or demonstrate opposition to something without knowledge of its existence.

criminal liability if they loan their car to their children, or anyone else, who, unknown to the parents, buy a container of liquor, open it, and leave it under the seat of the car or some other place not readily apparent when returning the vehicle. *Cf. People v. DeVoss,* 150 Ill.App.3d 38, 103 Ill.Dec. 523, 501 N.E.2d 840, 842 (Ill.App.Ct.1986) (concluding Illinois statute prohibiting transportation of open bottle by passenger not strict-liability offense and noting if it were, even out-of-town visitor picked up at airport would be liable if driver's son had hidden opened bottles in vehicle). A strict-liability open bottle law would

> drag[ ] in both the 'hot rodder' whose buddies had open beers in the car and the unsuspecting, kind old gentleman who drove home from church with the little old lady with the open flask of communion wine in her handbag.

*Id.* 103 Ill.Dec. 523, 501 N.E.2d at 841 (citing *People v. Hutchison,* 46 Ill.App.3d 725, 5 Ill.Dec. 189, 361 N.E.2d 328, 330 (Ill.App.Ct. 1977) (Mill, J., dissenting), *overruled by People v. Graven,* 124 Ill.App.3d 990, 80 Ill.Dec. 149, 464 N.E.2d 1132 (Ill.App.Ct.1984)).

Finally, to determine legislative intent, this court may also consider "[t]he occasion and necessity for the law" and "[t]he mischief to be remedied" by the law. Minn.Stat. § 645.16(1), (3) (1998). As the majority points out, the purpose of this statute is to prevent drinking while driving. A scienter or knowledge requirement does not hinder that purpose. If the driver has no knowledge that there is an open bottle in the vehicle, there is no danger that the driver will drink alcohol while driving. *Cf. DeVoss,* 103 Ill.Dec. 523, 501 N.E.2d at 842 (stating if passenger does not know there is open bottle in vehicle, "there can be little practical justification for concluding that he contributed to the danger which the instant prohibition addresses"). If the driver does know there is an open bottle in the vehicle, then, in that case, the driver clearly comes under the purview of subdivision 3. But that is not this case. The same clear logic is true with owners who are not present in the car but have loaned the car to someone else. If, upon turning over the car, the owner *is aware* that

the recipient has containers, then you can legitimately impose criminal liability on the owner under subdivision 3. That makes sense. The owner has every right, and in fact a legal obligation, to have open containers of alcohol known to him removed from the car before turning it over. Once that lack of knowledge becomes actual knowledge, and that is an element of proof for the state, the driver or owner loses the protection of "no knowledge" and is now properly subject to criminal liability under subdivision 3. This principle of law is in no way hampered by not imposing strict liability on innocent drivers and owners.

Minn.Stat. § 169.122, subd. 3, cannot, with fairness and logic, be a strict-liability offense. I would reverse Loge's conviction, as the state failed to prove an essential element of the crime, namely that he knowingly kept, or allowed to be kept, an open container in the vehicle he was driving.