STATE of Minnesota, Respondent,

v.

Steven Mark LOGE, Appellant.

No. C9–98–842.

Supreme Court of Minnesota.

March 2, 2000.

John M. Stuart, MN State Public Defender, Scott G. Swanson, Assistant State Public Defender, Minneapolis, for appellant.

Michael A. Hatch, MN Attorney General, James B. Early, Assistant Attorney General, St. Paul, for respondent.

## OPINION

GILBERT, Justice.

This case presents the question of whether knowledge is an element of the crime under the open bottle law when the driver is the sole occupant of a motor vehicle. Appellant Steven Mark Loge was cited on September 2, 1997, for a violation of Minn.Stat. § 169.122, subd. 3 (1998), which makes it unlawful for the driver of a motor vehicle, when the owner is not present, "to keep or allow to be kept in a motor vehicle when such vehicle is upon the public highway any bottle or receptacle containing intoxicating liquors or 3.2 percent malt liquors which has been opened." Violation of the statute is a misdemeanor. *See* Minn.Stat. § 169.122, subd. 4 (1998). After a bench trial, the district court held that subdivision 3 imposed "absolute liability" on the driver/owner. Loge appealed. The court of appeals affirmed the conviction, holding that proof of knowledge that the open container was in the motor vehicle was not required. *See State v. Loge*, 589 N.W.2d 491, 494 (Minn.App.1999). We affirm.

On September 2, 1997, Loge borrowed his father's pick-up truck to go to his evening job. Driving alone on his way home from work, he was stopped by two Albert Lea city police officers on County Road 18 at approximately 8:15 p.m. because he appeared to be speeding. Loge got out of his truck and stood by the driver's side door. While one officer was talking with Loge, the second officer, who was standing by the passenger side of the truck, observed a bottle, which he believed to be a beer bottle, sticking partially out of a brown paper bag underneath the passenger's side of the seat. He retrieved that bottle, which was open and had foam on the inside. He searched the rest of the truck and found one full, unopened can of beer and one empty beer can. After the second officer found the beer bottle, the first officer asked Loge if he had been drinking. Loge stated that he had two beers while working and was on his way home. Loge passed all standard field sobriety tests. The officers gave Loge citations for having no proof of insurance and for a violation of the open bottle statute but not for speeding. The no proof of insurance charge was later dismissed. Loge did not raise a probable cause challenge to either the stop or the officer's actions in observing the open bottle on the floor of the truck.

The trial on the open bottle charge took place on January 29, 1998. Loge testified that the bottle was not his, he did not know it was in the truck and had said that to one of the officers. That officer did not remember any such statements. At the close of the testimony, the trial court requested memoranda from Loge's counsel and the city attorney on the question of whether knowledge is an element of subdivision 3 of the open bottle statute. Both attorneys came to the same legal conclusion that proof of knowledge was required. The trial court found that one of the police officers "observed the neck of the bottle, which was wrapped in a brown paper sack, under the pickup's seat of the truck being operated by defendant." Based on an analysis of section 169.122 as a whole, the trial court held that subdivision 3 creates "absolute liability" on a driver/owner to "inspect and determine * * * whether there are any containers" in the motor vehicle in violation of the open bottle law and found Loge guilty. Loge was sen-

tenced to five days in jail, execution stayed, placed on probation for one year, and fined $150 plus costs of $32.50.

Loge appealed the verdict. The city attorney did not file a respondent's brief but sent a letter to the Clerk of Appellate Court stating that he "concur[red] with the reasoning and rationale in the Appellant's brief and therefore there [was] no reason for the State of Minnesota to file a Respondent's brief." In a published opinion, the court of appeals affirmed the decision of the trial court finding that the evidence, which establishes that one of the officers saw an open bottle containing intoxicating liquor underneath the passenger seat of the truck Loge was driving on a public highway, was sufficient to support Loge's conviction. *See Loge*, 589 N.W.2d at 494. The court of appeals held that proof of knowledge that the bottle was in the truck is not required to sustain a conviction. *See id.*

Loge's petition for further review was granted. The Attorney General then assumed responsibility for this case and filed a respondent's brief in which the Attorney General argues, contrary to the previous position of the state, that there is no knowledge requirement under subdivision 3.

Loge is seeking reversal of his conviction because, he argues, the trial court and court of appeals erroneously interpreted subdivision 3 of the open bottle statute [1] not to require proof of knowledge. Loge argues that the words "to keep or allow to be kept" implicitly and unambiguously require a defendant to have knowledge of the open container in the motor vehicle in order for criminal liability to attach. He argues that "keep" means "to maintain, or cause to stay or continue, in a specified condition, position, etc." Loge argues that that definition suggests that a person must purposely choose to continue possession. Further, Loge argues that the word "allow" from the phrase "allow to be kept" means "to permit; to grant license to," suggesting awareness at the minimum.

The state argues that the language of subdivision 3 creates a strict liability offense. The statute was enacted in 1959 and subdivision 3 has not had any substantive change since its enactment.[2] The

---

1. Minnesota Statutes § 169.122 reads in part:

   Subdivision 1. No person shall drink or consume intoxicating liquors or 3.2 percent malt liquors in any motor vehicle when such vehicle is upon the public highway.

   Subdivision 2. No person shall have in possession while in a private motor vehicle upon a public highway, any bottle or receptacle containing intoxicating liquor or 3.2 percent malt liquor which has been opened, or the seal broken, or the contents of which have been partially removed. For purposes of this section, "possession" means either that the person had actual possession of the bottle or receptacle or that the person consciously exercised dominion and control over the bottle or receptacle. This subdivision does not apply to a bottle or receptacle that is in the trunk of the vehicle if it is equipped with a trunk, or that is in another area of the vehicle not normally occupied by the driver and passengers if the vehicle is not equipped with a trunk.

   Subdivision 3. It shall be unlawful for the owner of any private motor vehicle or the driver, if the owner be not then present in the motor vehicle, to keep or allow to be

   kept in a motor vehicle when such vehicle is upon the public highway any bottle or receptacle containing intoxicating liquors or 3.2 percent malt liquors which has been opened, or the seal broken, or the contents of which have been partially removed except when such bottle or receptacle shall be kept in the trunk of the motor vehicle when such vehicle is equipped with a trunk, or kept in some other area of the vehicle not normally occupied by the driver of passengers, if the motor vehicle is not equipped with a trunk. A utility compartment or glove compartment shall be deemed to be within the area occupied by the driver and passengers.

2. A 1986 amendment removed gender specific references throughout the Minnesota Statutes but did not change the substance of the statutes amended. *See* Act of March 25, 1986, ch. 444, §§ 1–4, 1986 Minn. Laws 775, 775–77. A 1991 amendment instructed the revisor of statutes to substitute "3.2 percent malt liquor" for "nonintoxicating malt liquor." *See* Act of May 31, 1991, ch. 249, § 31, 1991 Minn. Laws 782, 794.

state relies heavily on the presumption that the legislature intends the statute as a whole to be effective and certain, with no surplusage. *See* Minn.Stat. §§ 645.16, 645.17(2) (1998); *State v. Orsello,* 554 N.W.2d 70, 75–76 (Minn.1996). The state argues that subdivision 3's "keep or allow to be kept" language must mean more than mere possession of alcohol because owners/drivers are already subject to liability under subdivision 2 for mere possession, which applies to all persons in the motor vehicle. The state further argues that to read subdivision 3 as requiring conscious or continuing possession would make it mere surplusage.

▆▆▆ Statutory construction is a legal determination reviewed by this court under a de novo standard. *See In re A.A.E.,* 590 N.W.2d 773, 776 (Minn.1999). An analysis of a statute must begin with a careful and close examination of the statutory language. *See Orsello,* 554 N.W.2d at 74. We undertake such a review to ascertain and effectuate legislative intent. *See* Minn.Stat. § 645.16. If the meaning of the statute is "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.*

▆▆▆ Except for search and seizure issues, this is the first time we have reviewed this statute since its enactment 40 years ago. We are asked only to interpret this statute under the facts presented. Although this statute addresses two potential, alternate situations involving a driver of "any private motor vehicle * * * when such vehicle is upon the public highway," only one is presented under these facts. Minn.Stat. § 169.122, subd. 3. The statute establishes liability for such a driver when that driver "keep[s] *or* allow[s] to be kept" any open bottle containing intoxicating liquor within the area normally occupied by the driver and passengers. *Id.* (emphasis added). These two alternate concepts are separated by the disjunctive "or," not "and." Unlike the use of the word "and," "or" signifies the distinction between two factual situations. We have long held that in the absence of some ambiguity surrounding the legislature's use of the word "or," we will read it in the disjunctive and require that only one of the possible factual situations be present in order for the statute to be satisfied. *See, e.g., Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 385 (Minn.1999); *Aberle v. Faribault Fire Dept. Relief Ass'n,* 230 Minn. 353, 360, 41 N.W.2d 813, 817 (1950) ("The word 'or' is a disjunctive and ordinarily refers to different things as alternatives."). Accordingly, we limit our opinion to the words "to keep."[3] Minn.Stat. § 169.122, subd. 3.

Further, even though this was a court trial, we note that similar to the statute, CRIMJIG 29.30 also recognizes the significance of the use of the disjunctive "or" and provides for separate, alternate instructions on "(kept) (allowed to be kept)." *See* 10a Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides, Misdemeanor and Gross Misdemeanor,* CRIM-JIG 29.30 (4th ed.1999); *see also* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice– Jury Instruction Guides, Misdemeanor and Gross Misdemeanor,* Explanatory Note (4th ed. 1999) ("[P]arentheses indicate options for factual variations * * * ."). In prior versions of the jury instructions, the comment noted that the trial judges are divided as to whether knowledge is required under the statute. *See* 10a Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides, Misdemeanor and Gross Misdemeanor,* M–JIG 3.17 Comment (1989 ed.). The comment noted that "[s]ince the [question of proof of knowledge] has not been ruled upon by the Minnesota appellate courts, the trial judge should include or omit the bracketed portion according to his or her own reading of the statute." *Id.* Thus, the

---

**3.** The use of the word "allow" may have other implications that are not present in this rec-
ord which we decline to address.

instruction included then, as it does now, an optional portion in brackets which reads "[This means that defendant knew the (bottle) (receptacle) was in the vehicle.]." 10a Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides, Misdemeanor and Gross Misdemeanor*, M–JIG 3.17 (1989 ed.); *see also* 10a Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides, Misdemeanor and Gross Misdemeanor*, CRIMJIG 29.30 (4th ed. 1999) ("[B]rackets indicate optional element choices, depending on the portion of the statute that has been charged."). We take this opportunity to review Minn. Stat. § 169.122, subd. 3 as it relates to the facts in the record where there was only a sole occupant in the vehicle.

We are guided in our interpretation of section 169.122, subdivision 3 by the statutory presumption that the legislature intends an entire statute to be effective and certain. *See* Minn.Stat. § 645.17(2). We must therefore look to all subdivisions of section 169.122 together to help us determine whether the legislature intended to impose liability under subdivision 3 on a driver/owner without proof of knowledge. Subdivision 1 prohibits the consumption of alcohol by any person in a motor vehicle on a public highway. *See* Minn.Stat. § 169.122, subd. 1 (1998). Subdivision 2 prohibits the actual possession of, or conscious exercise of dominion and control over, an open bottle of alcohol by any person in the vehicle. *See id.* § 169.122, subd. 2 (1998). In contrast, subdivision 3 provides that the owner, or if the owner is not present, the driver is responsible for ensuring that no open bottles of alcohol are present in a vehicle on a public highway, regardless of consumption, actual possession or conscious exercise of dominion and control. *See id.* § 169.122, subd. 3. Consumption, possession and presence of an open container of alcohol in a motor vehicle are each separate risks. The legis-

lature separately addressed each risk in section 169.122, subdivisions 1 through 3 in an effort to promote highway safety by decreasing the opportunity for alcohol consumption and drunken driving that an open container of alcohol anywhere in the vehicle creates. It is clear from reading the statute as a whole that the legislature intended to categorically prohibit open bottles of alcohol in a motor vehicle on a public road except under the limited circumstances that the legislature expressly addressed and carved out.[4] Thus, we find no ambiguity in the legislature's use of the word "keep."

▆▆ We are mindful of Loge's argument that, as a criminal statute, section 169.122 must be strictly construed. *See State v. Zacher*, 504 N.W.2d 468, 473 (Minn.1993). Where we have found a statute ambiguous, we have said, "if criminal liability, particularly gross misdemeanor or felony liability, is to be imposed for conduct unaccompanied by fault, the legislative intent to do so should be clear." *State v. Neisen*, 415 N.W.2d 326, 329 (Minn. 1987). However, we have held that the rule of strict construction does not require this court to assign the narrowest possible interpretation to the statute or to adopt a construction that would render the statute or one of its subdivisions meaningless. *See Zacher*, 504 N.W.2d at 473. Furthermore, where, as here, we have interpreted the statute and find no ambiguity, "the so-called 'rule of lenity,' which holds that *ambiguity* concerning the ambit of criminal statutes should be resolved in favor of lenity towards the defendant," has no application. *Orsello*, 554 N.W.2d at 74 (emphasis added) (citations omitted). As we did in *Gullings v. State Bd. of Dental Examiners*, 200 Minn. 115, 119, 273 N.W. 703, 705 (1937), we adhere to the rule of strict construction for a penal statute but hold that where the language of the stat-

---

4. Minnesota Statutes § 169.122, subd. 5 (1998) exempts charter buses and limousines from the scope of the statute.

ute is clear, the court is bound to give effect thereto.

In delineating the elements of the crime, we have also held that the legislature is entitled to consider what it deems "expedient and best suited to the prevention of crime and disorder." *State v. Morse*, 281 Minn. 378, 382, 161 N.W.2d 699, 702 (1968) (citations omitted). The Supreme Court has addressed the dichotomy between the opportunity to discover and the difficulty of proof in arranging a statutory scheme establishing criminal liability for an unknowing individual:

> Congress weighed the possible injustice of subjecting an innocent seller to a penalty against the evil of exposing innocent purchasers to danger from the drug, and concluded that the latter was the result preferably to be avoided. Doubtless considerations as to the opportunity of the seller to find out the fact and the *difficulty of proof* of knowledge contributed to this conclusion.

*United States v. Balint*, 258 U.S. 250, 254, 42 S.Ct. 301, 66 L.Ed. 604 (1922) (emphasis added). Here, if knowledge was a necessary element of the open container offense, there would be a substantial, if not insurmountable, difficulty of proof. The legislature may have weighed the possible injustice of subjecting a driver to a penalty against the opportunity of the driver to discover any open bottle and the difficulty of proof of knowledge. It is therefore reasonable to conclude that the legislature, weighing the significant danger to the public, decided that proof of knowledge under subdivision 3 was not required.

■ The legislature has made knowledge distinctions within its traffic statutes

that also guide our interpretation. For example, with respect to marijuana in a motor vehicle, the Minnesota legislature has used language similar to the language found in section 169.122, subdivision 3 ("keep or allow to be kept") but added a knowledge requirement. An owner, or if the owner is not present, the driver, is guilty of a misdemeanor if he *"knowingly* keeps or allows to be kept" marijuana in a motor vehicle. Minn.Stat. § 152.027, subd. 3 (1998) (emphasis added). The use of the word "knowingly" in section 152.027, subdivision 3 to modify the same language as contained in section 169.122, subdivision 3 indicates that the legislature does not perceive the word "keep" alone to imply or contain a knowledge element. Section 152.027 became effective in August of 1989, 30 years after section 169.122 was enacted. If the legislature had intended section 169.122 to have a knowledge requirement, it could have added the word "knowingly," as the legislature did in section 152.027, when section 169.122 was amended in 1990, 1991, 1993 and 1994 or at any other time.[5]

In the absence of such a modifier, we believe that the parallels between subdivision 3 and other non-alcohol related traffic statutes also support our holding. The phrases "it shall be unlawful" or "no person shall" appear throughout the traffic code and have never been understood to require a showing of intent to prove a violation of the statute. *See generally* Minn.Stat. § 169.14 (1998) (speeding); *Butler v. Engel*, 243 Minn. 317, 336, 68 N.W.2d 226, 238 (1954). In fact, Loge concedes that other provisions of the traffic code that use such language are strict liability offenses. *See generally* Minn.Stat. §§ 169.14, 169.48 (1998).

---

5. One year after the original open bottle statute was enacted, the Attorney General for the State of Minnesota issued an opinion construing the "keep or allow to be kept" language not to require proof of knowledge. *See* Op. Att'y Gen. No. 54, at 103–05 (Jan. 5, 1960). Attorney general opinions are entitled to "careful consideration" by this court particularly when the opinion is long-standing. *See Billigmeier v. County of Hennepin*, 428

N.W.2d 79, 82 (Minn.1988). Furthermore, this court has held that where the legislature amends a statute after it has been construed by an attorney general opinion without changing that construction, it is evidence of legislative intent to adopt the meaning attributed to the statute by the attorney general. *See Stoecker v. Moeglein*, 269 Minn. 19, 22–23, 129 N.W.2d 793, 796 (1964).

Lastly, Loge argues that an interpretation excluding knowledge as an element could lead to absurd results. While it is true that the legislature does not intend a result that is absurd or unreasonable, *see* Minn.Stat. § 645.17(1) (1998), we do not believe such a result exists here. Loge's conviction resulted from an officer standing outside the truck observing the open container of beer sticking partially out of a brown bag underneath the seat on the passenger side of the truck Loge was driving. By simply taking control of the truck, Loge took control and charge of the contents of the truck, including the open bottle, even if he did not know the open bottle was in the truck.

Though the dissent acknowledges the authority of the legislature to create criminal statutes without regard to intent or knowledge, it cites to the rule [6] enunciated in *Kremer* as a limitation: "it is not essential that the wrongdoer should intend to commit the crime to which his act amounts, but it is essential that he should intend to do the act which constitutes the crime." *State v. Kremer*, 262 Minn. 190, 191, 114 N.W.2d 88, 89 (1962) (citations omitted). However, although dicta, we also stated:

> If the defendant * * * went through a stop light that he did not see, and was defending on the ground that he did so without any criminal intent, a court could be justified in finding him guilty of a violation of the ordinance involved. When the driver intends to proceed forward, or is negligent in any way, he can be held liable for his acts.

*Id.* at 192, 114 N.W.2d at 89. Similarly, here, even though Loge did not see the open bottle and argues therefore that he

had no criminal intent, he, as the driver, intended to proceed forward. As in the *Kremer* hypothetical, not seeing a stop sign or, as here, not seeing an open bottle, a court is justified in finding a defendant guilty of a violation of the statute if the defendant intended to proceed forward. In order to avoid violating this statute, Loge had an affirmative duty to ensure that there were no open containers in the area of a motor vehicle normally occupied by the driver or passenger on a public highway. He had the opportunity and was in the best position to find out the fact of the open bottle's presence "with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." *Id.* (citing *Morissette v. United States*, 342 U.S. 246, 256, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). Here, all Loge had to do was observe an open beer bottle protruding from a bag under the passenger's seat, which the trial court found was visible even to the officer who was standing outside the truck looking in.

The "to keep" an open bottle language of subdivision 3 means more than knowingly continuing possession because such conduct is already made illegal by subdivision 2. Any other interpretation would render subdivision 3 mere surplusage and would violate the statutory presumption that the legislature intends an entire statute to be effective and certain. *See* Minn.Stat. § 645.17(2); *Orsello*, 554 N.W.2d at 75–76. Therefore, we hold that in a prosecution under section 169.122, subdivision 3, the state need not prove that the driver and sole occupant of a motor vehicle on a public highway knew of the existence of the

---

6. The dissent also cites *State v. Dombroski*, 145 Minn. 278, 176 N.W. 985 (1920) and *In re A.A.E.*, 590 N.W.2d 773 (Minn.1999) for support for this rule. In *Dombroski*, we held that with respect to a statute criminalizing the rape of an incompetent woman, the legislature had "clearly eliminate[d] the element of knowledge and intent" about a victim's incompetence. *See* 145 Minn. at 281, 176 N.W.

at 986. We found in *A.A.E.* that other statutory language ("under circumstances") compelled us to hold that a person must act recklessly in endangering another. 590 N.W.2d at 777. *Dombroski* and *A.A.E.* involved construing the language of specific statutes; neither altered our basic understanding of the rule enunciated in *Kremer*.

open bottle containing intoxicating liquors in the motor vehicle.

Affirmed.

PAUL H. ANDERSON, J. (dissenting).

I respectfully dissent. In its effort to reach a correct policy decision, the majority disregards our proper role as interpreters of the law. In doing so, the majority has preempted the legislature's function and assumed the mantle of policymaker. I agree that under certain circumstances the legislature may provide that criminal liability attach without requiring any showing of intent or knowledge on the part of the person charged. *See In re A.A.E.*, 590 N.W.2d 773, 777 (Minn.1999). Further, in the context of open containers of alcohol in motor vehicles, there is a credible argument that it is good public policy given the social and economic costs that result from the combination of alcohol and motor vehicles. But, all of that said, the majority's analysis simply does not demonstrate the requisite clear statement of legislative intent necessary to create criminal liability in the absence of a showing of knowledge or intent.

It is a fundamental principle of our substantive law, especially for statutes carrying criminal sanctions, that obligations imposed by law must be stated in clear and understandable terms. *See State v. Lanesboro Produce & Hatchery Co.*, 221 Minn. 246, 253, 21 N.W.2d 792, 795 (1946). Due process requires that a penal statute be based on "knowable criteria which [persons] of common intelligence who come in contact with the statute may use with reasonable safety in determining its com-

mand." *Id.* (citing *Collins v. Kentucky*, 234 U.S. 634, 34 S.Ct. 924, 58 L.Ed. 1510 (1914)). A statute is unconstitutionally vague "if it requires or forbids in terms so vague that [persons] of common intelligence must guess at its meaning and differ as to its application." *Lanesboro Produce*, 221 Minn. at 254, 21 N.W.2d at 795.

We have stated that when the legislature intends to make an act unlawful and to impose criminal sanctions without any requirement of intent or knowledge, it must do so clearly. *See State v. Neisen*, 415 N.W.2d 326, 329 (Minn.1987). Further, the legislature's authority to impose criminal sanctions without any requirement of knowledge or intent is subject to another important limitation. While a person need not intend his acts to be criminal, *he must intend to do the act that is criminal.* We have stated that "[i]t is not essential that the wrongdoer should intend to commit the crime to which his act amounts, [but] it is essential that he should intend to do the act which constitutes the crime." *State v. Kremer*, 262 Minn. 190, 191, 114 N.W.2d 88, 89 (1962).[1] The United States Supreme Court, confronted with a similar issue, noted:

> Historically, our substantive criminal law is based upon a theory of punishing the vicious will. It postulates a free agent confronted with a choice between doing right and doing wrong and choosing freely to do wrong.

*Morissette v. United States*, 342 U.S. 246, 250, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (citations omitted). Further, it is worth noting that in *Morissette* the Court held

---

1. The majority responds to this argument by noting that we also stated in *Kremer* that a person could be held liable for driving through a stop sign that he failed to see. However, the majority misses the essential point of *Kremer*. A wrongdoer must intend to do the act *that constitutes the crime.* As we went on to point out in *Kremer*, while operating a motor vehicle in a negligent manner (i.e., failing to observe traffic signs) can support a level of intent (negligence) to support criminal liability, running a stop sign due to

unexpected brake failure would not. *See Kremer*, 262 Minn. at 191, 114 N.W.2d at 89. This is the distinction the majority fails to appreciate. At this time, there is no requirement for the operator of a motor vehicle to inspect the passenger compartment before driving in the same way that there is a requirement to observe and obey traffic signs. In this respect, Loge's situation is more analogous to "brake failure" than to a "negligent failure" to observe the rules of the road.

that the "mere omission from [a statute] of any mention of intent will not be construed as eliminating that element from the crimes denounced." *Id.* at 263, 72 S.Ct. 240.

The majority's analysis of the language of Minn.Stat. § 169.122 does not demonstrate the level of certainty necessary to allow me to conclude that the statute manifests a clear intent by the legislature to impose criminal liability regardless of intent or knowledge. The plain language of the statute, the unreasonable results that arise from the majority's interpretation, the differing application of the statute by district courts, and even the cases cited by the majority lead me to this conclusion. Minnesota Statutes § 169.122, subd. 3, simply lacks the requisite clarity to support the imposition of criminal liability without any showing of intent or knowledge.

We are guided by our accepted rules of statutory interpretation when determining the meaning of a statute. One rule, which the majority claims to follow, is to look to the plain language of the statute. *See* Minn.Stat. § 645.16. The majority states that the language is plain and dispositive because the legislature frequently uses the phrase "it shall be unlawful" or "no person shall" to indicate strict liability for motor vehicle offenses. However, this is not the dispositive language in this statute. Rather, the question turns on the use of the phrase "keep or allow to be kept."

The majority attempts to avoid the implications of the phrase "allow to be kept" by discarding it on the grounds that Loge was the sole occupant of the vehicle. While we may limit the application of law to the facts presented, that does not mean that we may disregard inconvenient language contained in the statute as a whole. *See Kollodge v. F & L Appliances,* 248 Minn. 357, 360, 80 N.W.2d 62, 64 (1956) (stating that the court may not read statutory language out of context). The majority cannot avoid the implications of the term "allow" because it is convenient to do

so. In other contexts, we have held that the inclusion of words like "permit" (a synonym of "allow") clearly indicates a legislative intent to require some level of knowledge or intent. *See, e.g., Peterson v. Pawelk,* 263 N.W.2d 634, 637 (Minn.1978) (stating that the use of the term "permit" in a statute clearly indicates that the legislature did not intend to impose strict liability). While it is possible to find definitions of "keep" that do not appear to implicate knowledge or intent, there are, as Loge points out, many definitions of "keep" that imply some level of conscious knowledge or intent. The multiple definitions of the word "keep" cited by the parties underscore the lack of clarity in the statute's language. None of these definitions clearly indicate that proof of knowledge or intent is either required or clearly excluded.

The majority asserts that because the legislature used the similar language "keeps or allows to be kept" in Minn.Stat. § 152.027, but added the word "knowingly," the lack of the word "knowingly" in Minn.Stat. § 169.122 means that no knowledge requirement was intended. While we do presume that the legislature uses words in a consistent manner, here such analysis yields no clear answers. It is clear that the use of the word "knowingly" in section 152.027 indicates that the legislature intended to require knowledge for the possession of marijuana in a vehicle. However, the fact that it is not included in section 169.122, a law passed some 20 years earlier and on a different subject, does not indicate that the legislature intended to disregard any requirement of knowledge or intent.

The majority's analysis also disregards those situations where there is more than one person in the vehicle. However, limiting their holding in this way does not allow the majority to artificially limit the scope of the statute and then claim that requiring knowledge in this case would make subdivision 2 of the statute surplusage. I cannot ignore the fact that the legislature intended this statute to be applied in all

situations regardless of the number of persons in the vehicle. Viewed as such, requiring some level of intent on the part of the driver or owner would not render subdivision 2 of the statute surplusage. Also, when viewed in the situation where more than one person is in the vehicle, the majority's interpretation of section 169.122 implies some very troubling and unreasonable outcomes.

Under subdivision 2 of the statute, criminal liability is imposed for possession of an open container of alcohol by any person in a motor vehicle. *See* Minn.Stat. § 169.122, subd. 2. Possession here means actual possession of or the conscious exercise of dominion or control over the container. *See id.* The majority claims that because this subdivision already imposes liability for the knowing possession of an open container of alcohol in a vehicle, to do so again in subdivision 3 is unnecessary. This line of reasoning only works in the majority's interpretation and only in the case where one person is in the vehicle. When more than one person is in the vehicle, the purpose of the different subdivisions becomes clear. A passenger may have an open container of alcohol and not have disclosed that fact to the driver. Clearly subdivision 2 applies to that passenger. But it is also clear that because the passenger concealed this fact from the driver, the driver should not be held liable. To do otherwise would be to hold the driver criminally liable for an act he did not intend to commit and over which he had no control. In the case when a container is open and visible in the passenger compartment of a vehicle and none of the passengers are shown possessing it, then the owner, or driver, remains ultimately responsible. Simply because the subdivision may not have application in a unique fact pattern does not make it surplusage for the purposes of our analysis.

The above example highlights one of the unreasonable results of the majority's interpretation. A driver could be held responsible for the acts of passengers that they conceal from him. An absent owner could be held liable for acts of passengers he has never met. In interpreting a statute, we assume that the legislature does not intend an unreasonable or absurd result. *See* Minn.Stat. § 645.17.

The majority also implies that in this case the bottle was in plain sight and that under the circumstance of this case, Loge actually knew (or should have known) that the open bottle was in the truck. The district court made no such finding nor is it our province to do so. The majority attempts to mollify the results of its holding by saying that in this case Loge really knew. While an interesting conclusion on the part of the majority, it renders the majority's holding unnecessary. If Loge knew, or reasonably should have known, that this open container was present in his vehicle, the majority's holding is unnecessary. In such a case, there is a showing of knowledge or intent sufficient to sustain Loge's conviction without interpreting the statute as having no requirement for knowledge or intent.

While the majority mentions the history of the application of this statute by district courts, it fails to consider its import. While not binding on this court, we do look to the practical construction of a statute by public officials in determining its meaning. *See Governmental Research Bureau, Inc. v. St. Louis County, Minn.,* 258 Minn. 350, 357, 104 N.W.2d 411, 416 (1960). The district court judges of Minnesota are divided about the meaning of Minn.Stat. § 169.122, subd. 3. The Minnesota District Judges Association highlighted the ambiguity of the statute when it noted in the 1989 CRIMJIG on Minn.Stat. § 169.122, subd. 3 that

> Trial judges in Minnesota are divided as to whether or not knowledge is required under the statute, and an early Attorney General Opinion maintains that the language of the statute does not require knowledge. Op. Atty. Gen., 989a–25, Jan. 5, 1960.

10a Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides, Misdemeanor and Gross Misdemeanor,* M–JIG 3.17 (1989 ed.). Later editions continued to carry the knowledge requirement as optional, leaving its inclusion to the discretion of the trial judge. *See* 10a Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides, Misdemeanor and Gross Misdemeanor,* Preface and CRIM-JIG 29.30 (4th ed.1999). Such division by the trial bench of this state indicates that the meaning of the statute's language is much less clear than the majority contends.[2]

The majority cites two of our earlier decisions to support the proposition that the legislature may impose criminal liability without regard to intent or knowledge. While I do not disagree with this proposition, the cited cases also demonstrate the way we have analyzed statutes when it is claimed that knowledge or intent is not required to impose criminal liability. In *State v. Dombroski,* we noted that the legislature clearly and unambiguously manifested its intent to impose criminal liability for the statutory rape of an incompetent female without regard to whether the accused knew that the victim was incompetent. *See* 145 Minn. 278, 279, 176 N.W. 985, 985–86 (1920). Here, the statute did not require knowledge that the victim was incompetent, but it required intent to commit an act that, in combination with the victim's status, would constitute statutory rape.

In *In re A.A.E,* we acknowledged that the legislature may make a person criminally liable for injuries resulting from the discharge of a firearm regardless of whether that person intended to cause injury, but we held that some level of intent, reckless disregard of a known danger, was required. *See* 590 N.W.2d at 777. While the actor need not intend to cause injury,

he must intend to recklessly discharge a firearm. *See id.* The dispute in *A.A.E.* was not whether intent was required, but whether a specific intent to injure another was required. *See id.* We observed that the language of the statute could have been read to impose liability under any circumstance where a firearm was discharged and an injury resulted; however, we noted that such an interpretation conflicted with other language in the statute and would produce unreasonable results. *See id.* Importantly, in both *Dombroski* and *A.A.E.,* there needed to be an intent to commit the act for which criminal sanctions would be imposed.

The majority, limiting its analysis of this statute to the narrow facts in this case, proceeds undistracted by the implications of other contextual language in the statute and the fact that district courts of this state have differed on both the meaning and the application of the statute. While the majority claims that their holding is limited only to those situations where there is one occupant in the vehicle, they also note that this is the first time we have directly addressed the question of whether knowledge or intent is required for this statute. Given the obvious lack of clarity, the majority's holding will likely have much wider effect.

Finally, under the majority's holding, we now will impose criminal liability on a person, not simply for an act that the person does not know is criminal, but also for an act the person does not even know he is committing. While the district court and the majority seem to assume that everyone who drives a motor vehicle knows that he or she is obligated to search the entire passenger compartment of the vehicle before driving on the state's roads, the law imposes no such requirement. Most drivers would be surprised to discover that

**2.** This division was further demonstrated in this case when both the city attorney and defense counsel agreed that the statute required a showing of knowledge. The city attorney has maintained this position throughout the appellate process. It is the attorney general who now argues that the statute requires no showing of intent or knowledge.

after anyone else used their vehicle—children, friends, spouse—they are criminally liable for any open containers of alcohol that are present, regardless of whether they know the containers are there. This also means that any prudent operator of a motor vehicle must also carefully check any case of packaged alcohol before transport and ensure that each container's seal is not broken. *See* Minn.Stat. § 169.122 (defining an open bottle as a container that is open, has the contents partially removed, or has the seal broken). Under the majority's interpretation, all of these situations would render the driver criminally liable under Minn.Stat. § 169.122. Without a more clear statement by the legislature that this is the law, I cannot agree with such an outcome.

PAGE, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.

STRINGER, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.